CYNTHIA E. GITT,      SBN# 60369
cgitt@browngitt.com
LAWRENCE L. YANG   SBN# 206738
lyang@browngitt.com
ANI M. AKOPYAN      SBN# 234158
aakopyan@browngitt.com
BROWN GITT LAW GROUP, LLP
300 N. Lake Avenue, Suite 200
Pasadena, California 91101
Telephone: 626.229.1919
Facsimile: 626.229.1917

Attorneys for Defendant
RUAN LOGISTICS CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BURNHAM, FERNANDO CASTILLO, NEVA CRAWFORD, RICKY CRAWFORD, TED DAY, JOHN GUGLER, CHARLES HOWLETT, EDUARDO JIMENEZ, BILL MCMAHON, JODY PAULSON, ROBERT ROJAS, TODD SHOOK, TONY SKIRROW, DANTE STEWARD, SALVADOR BUCIO SUAREZ AND DANIEL WARE, on behalf of themselves and all others similarly situated, and on behalf of all other "aggrieved" employees,<br><br>                    Plaintiffs,<br><br>          v.<br><br>RUAN TRANSPORTATION, an Iowa Corporation and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO.  SACV12-0688 AG (ANx)<br><br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**[Filed Concurrently With Request for Judicial Notice; Objections to Plaintiffs' Evidence; Declarations of Ellen Bronchetti; Antoinette Devereaux; Kendra Fries; Cynthia Gitt (with attached Declarations); Billy Ingram; Melinda Larsen; Andrew McCuan; Jim Pfeifer; and Sam Schott]**<br><br>**Date:**     April 22, 2013<br>**Time:**    10:00 a.m.<br>**Ctrm.:**   Room 10D<br><br>Complaint Filed:   May 2, 2012 |

## **TABLE OF CONTENTS**

| | Page |
|---|---|

I. INTRODUCTION...................................................................... 1

II. FACTUAL BACKGROUND.
     INTRODUCTION..................................................... ......11

  A. Plaintiffs' Class Certification Motion is Premature......... .......... 11

  B. There Was and Is No One "Ruan Compensation Governing
     the 3 RLC
     Terminals................................................................... 11

  C. There Was No One "Ruan" Policy Regarding Work Boots
     Or Milk Coolers............................................................ 12

  D. RLC Must Rely On Its Drivers to Accuratgely Record The Time Records
     Upon Which the Dri9vers Are Paid .............................11

III. LEGAL ARGUMENT......................................................... 15

  a. Plaintiff's UCL Claims Are Preempted By The FAA..................... 15

  b. Plaintiffs Have Failed to Establisyh That The Case Is So NumerousThat
     Joinder of all Members is Impracticable Under Rule 23(a)(1) ..........16

  c. Plaintiffs Have Failed to Establish That A Class Would Generate
     Common Answers to Common Questions Under Rule 23(a)(2) ............. 17

  d. Compensation and Waiting Time ................................... 18

     i. Work boots and Milk Coolers........................................20
     ii Wage Statements.......................................... 21

D.   Plaintiffs Have Failed to Establish That Their Claims Are Typical of the
     Putative Class Under Rule 23(a)(3) ......................................21

E.   Plaintiffs Have Failed to Establish That They Are Adequate Class
     Representatives Under Rule 23(a)(4) ..................................... 22

F.   Plaintiffs Have Failed To Establish That (1) Common Questions
     Predominate, And That (2) A Class Certification Is A Superior Method For
     Adjudicating This Controversy Under Rule 23(b)(3) ............... 23

IV.    CONCLUSION........................................................... 25

i

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abby v. City of Detroit,
   218 F.R.D. 544 (E.D. MI. 2003).............................................................9

Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.,
   247 F.R.D. 156 (C.D. Cal. 2007).............................................................6

Alonzo v. Maximus, Inc.,
   832 F.Supp.2d 1122(C.D. Cal. 2011).....................................................21

American Airlines, Inc. v. Wolens,
   513 U.S. 219, 115 S.Ct. 817, 130 L.Ed. 2d. 715 (1995).........................2

Anaheim Prods Inc. v. Windsor,
   521 U.S. 591 (1997)...............................................................................9

Arrunategui v. ConocoPhillips Co.,
   2010 U.S. Dist. LEXIS 142237 (C.D. Cal. 2010)...................................3

Babineau v. Fed. Express Corp.,
   576 F.3d 1183 (11th Cir. Fla. 2009).......................................................3

Balasanyan v. Nordstrom, Inc.,
   2012 U.S. Dist. LEXIS 181350.............................................................18

Brown v. American Airlines, Inc.,
   2011 U.S. Dist. LEXIS 99495 (C.D. Cal. 2011).....................................1

Carson v. Knight Transportation,
   Tulare County Sup. Court Case No. VCU234186....................................5

Cole v. Crst, Inc.,
   2012 U.S. Dist. LEXIS 144944 (C.D. Cal. 2012)...................................3

Comcast Corp. v. Behrend,
   2013 U.S. LEXIS 2544 (U.S. March 27, 2013).......................................2

Crawford v. Honig,
   37 F.3d 485 (9th Cir. 1994)..................................................................22

i

<u>Ctr. of Surrogate Parenting, Inc. v. Circle Surrogacy, Ltd.,</u>
  2012 U.S. Dist. LEXIS 85033 (C.D. Cal. 2012)......................................................3

<u>Dailey v. Sears, Roebuck and Co.</u>
  (March 20, 2013) 2013 Cal.App. LEXIS 219 .........................................................10

<u>Dunbar v. Albertson's, Inc.</u>
  (2006) 141 Cal.App.4th 1442 ....................................................................................3

<u>Ellis v. Costco Wholesale Corp.,</u>
  657 F.3d 970 (9th Cir. 2011) .....................................................................................1

<u>Fitzgerald v. Skywest Airlines,</u>
  155 C.A.4th 411 (2d Dist. 2007) ...............................................................................2

<u>Fitzgerald v. Skywest, Inc.</u>
  (2007) 155 Cal.App.4th 411 .....................................................................................15

<u>Gable v. Land Rover North America, Inc.,</u>
  2011 U.S. Dist. LEXIS 90774 (C.D. Cal. 2011) .....................................................24

<u>Hanon v. Dataproducts Corp.,</u>
  976 F.2d 497 (9th Cir. 1992) .....................................................................................6

<u>In Re Hotel Telephone Charges,</u>
  500 F.2d 86 (9th Cir. 1974) .......................................................................................9

<u>In Re Jetblue Airways Corp. Privacy Litigation,</u>
  379 F.Supp.2d 299 (E.D.N.Y. 2005) .........................................................................2

<u>Konik v. Time Warner Cable,</u>
  2010 U.S. Dist. LEXIS 136923 (C.D. Cal. 2010) .....................................................1

<u>Luiken v. Domino's Pizza, LLC,</u>
  705 F.3d 370, 2013 U.S. App. LEXIS, 2393 (8th Cir. Feb. 4, 2013)......................3

<u>Mahfood v. QVC, Inc.,</u>
  2008 U.S. Dist. LEXIS 105229 (C.D. Cal. 2008) .....................................................1

<u>Marlo v. United Parcel Service, Inc.,</u>
  639 F.3d 942 (9th Cir. 2011) ...................................................................................10

<u>Mazur v. Ebay Inc.,</u>
  257 F.R.D. 563 (N.D. Cal. 2009)...............................................................................6

iv

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Pfohl v. Farmers Ins. Group,
    2004 U.S. Dist. LEXIS 6447 (C.D. Cal. 2004).....................................................17

Price v. Starbucks Corp.
    (2011) 192 Cal.App.4th 1136 ............................................................................21

Rosales v. El Rancho Farms,
    2012 U.S. Dist. LEXIS 11069 (E.D. Cal. 2012)..................................................24

Rose v. SLM Fin. Corp.,
    254 F.R.D. 269 (W.D.N.C. 2008)........................................................................24

Rupe v. Beard,
    2013 U.S. Dist. LEXIS 31139 (E.D. Cal. Mar. 5, 2013)......................................3

Saunders v. Trattoria,
    2007 U.S. Dist. LEXIS 97193 (C.D. Cal. 2007) ..................................................9

Sullivan v. Winn-Dixie Greenville, Inc.,
    62 F.R.D. 370 (D. S.C. 1974)............................................................................22

Tijero v. Aaron Brothers, Inc.,
    2012 U.S. Dist. LEXIS 183238 (N.D. Cal. 2013) ..............................................10

Vinole v. Countrywide Loans,
    571 F.3d 935 (9th Cir. 2009) ......................................................................10, 20

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed. 2d 374 (2011) ....................................1

Wang v. Chinese Daily News, Inc.,
    2013 U.S. App. LEXIS 4423 (9th Cir. Cal., March 4, 2013) .............................10

Yang v. Shanghai Gourmet, LLC,
    2012 U.S. App. LEXIS 5464 (9th Cir. 2012)....................................................20

Zinser v. Accufix Research Inst., Inc.,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................9

DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**STATUTES**

California Labor Code § 203 ..................................................................20

**OTHER AUTHORITIES**

California Code of Regulations,
    Title 8, Section 13520 ...................................................................19

Rule 23 ..............................................................................................1

Rule 23(a)..........................................................................................1

Rule 23(a)(1) ................................................................................2, 16

Rule 23(a)(2) ......................................................................................3

Rule 23(a)(3) ....................................................................................21

Rule 23(a)(4) ......................................................................................6

Rule 23(b) ........................................................................................15

Rule 23(b)(3) ......................................................................................1

Rule 23(b)(3)'s ................................................................................24

Rule 26 ..............................................................................................1

§17200..............................................................................................15

371 F.3d 945 ....................................................................................20

Section 47.7 ......................................................................................20

**Miscellaneous**

DLSE Enforcement Policies and Interpretations Manual (2002) at
    http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf ......................20

DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## I.   **INTRODUCTION**

In the parties' Joint Rule 26 Report, Plaintiffs and their counsel represented to this Court that "Plaintiffs do not contemplate adding additional defendants at this time, although they may seek to add additional named plaintiffs." (Gitt Decl. ¶14, Exh. I, Docket No. 11.)   With this class certification motion, however, Plaintiffs have attempted to sandbag RLC by adding last minute – heretofore unraised, and unpled – theories regarding "joint employers" (by attempting to add as a defendant an entity that was neither named in, nor served with, the complaint), as well as newfangled reimbursement claims that were neither alleged in their complaint nor the subject of any discovery requests to date. (Gitt Decl. ¶¶15-18, 31-33.)[1]

Applying the requisite "rigorous analysis"[2], this Court must deny Plaintiffs' class certification motion because Plaintiffs have failed to meet their burden of affirmatively demonstrating[3] with *actual, sufficient evidence*[4] that they have met all four elements of Federal Rule of Civil Procedure 23(a), as well as the two-part test of Rule 23(b)(3).   "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 131 S.Ct. 2541, 2552, 180 L.Ed. 2d 374 (2011).   To conduct a rigorous analysis, "it is not correct to say a district court *may* consider the merits … rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." Ellis v. Costco

---

[1]   This Court rightly frowns upon attempts to raise new legal theories for the first time in class certification motions.   "Class certification is not a time for asserting new legal theories that were not pleaded in the complaint." Brown v. American Airlines, Inc., 2011 U.S. Dist. LEXIS 99495, *19-20 (C.D. Cal. 2011) (denying class certification).

[2]   As this Court has repeatedly recognized, "A district court should certify a class *only if* the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met." Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *19-20; *see also* Mahfood v. QVC, Inc., 2008 U.S. Dist. LEXIS 105229, *8-9 (C.D. Cal. 2008)(denying class certification).

[3]   "Rule 23 does not set forth a mere pleading standard.   **A party seeking class certification must affirmatively demonstrate his compliance with the Rule** – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 131 S.Ct. 2541, 2551, 180 L.Ed. 2d 374 (2011)(bold emphasis added; original italics).

[4]   Plaintiffs "must provide sufficient evidence, not just "some evidence," that the Rule 23(a) requirements are satisfied." Konik v. Time Warner Cable, 2010 U.S. Dist. LEXIS 136923, *29 (C.D. Cal. 2010)(denying motion for class certification).

1

1   Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011)(original italics).  The Supreme

2   Court categorically reaffirmed these first principles just last week; *see* Comcast

3   Corp. v. Behrend, 2013 U.S. LEXIS 2544, *11-13 (U.S. March 27, 2013).

4      Plaintiffs' motion must be denied for the following reasons:

5   **First**, Plaintiffs have failed to demonstrate under Rule 23(a)(1) that the

6   proposed class is so numerous that joinder of all members is impracticable.  The

7   only named defendant in this case is Ruan Logistics Corporation ("RLC"), which

8   operates the Victorville terminal[5], from which all the named Plaintiffs exclusively

9   come (either as current or former drivers).  At least 84 out of 118 (i.e., 71% of)

10   current and former drivers at Victorville who are potential class members have

11   already accepted settlements from RLC and signed releases (excluding the 16 named

12   plaintiffs, and plaintiffs' counsel represents another four that he intends to add as

13   plaintiffs).  Of this number 37 out of the 44 current employees (i.e., 84%) to whom

14   offers were made have signed releases.  Thus, joinder of any remaining non-settling

15   drivers would not be impracticable.  In the applicable limitations period (May 2,

16   2009 to the present)[6], only 41 past and present drivers, including plaintiffs, would

17   remain in the group of people who have not signed releases.

18      Attempting to create numerosity where none exists, Plaintiffs raise in their

19   motion (for the first time in this case) a "joint employer" claim, attempting to

20   shoehorn into the class drivers at terminals belonging to a non party entity, Ruan

21   Transport Corporation ("RTC")[7].  This untimely theory fails, as does Plaintiffs,

22   speculative conclusion that such a class would supposedly number between 250-

23

24   [5] As this Court is aware, the Victorville terminal relocated a short distance to Adelanto.  For ease of
reference, it will be referred to as "Victorville" herein.

25   [6] Plaintiffs attempt to create a 4-year statute of limitations (back to May 2, 2008), even though their
UCL claim fails in this case, because such claims are preempted by the FAAAA.  Fitzgerald v. Skywest

26   Airlines, 155 C.A.4th 411 (2d Dist. 2007), *citing* Morales v. TWA, Inc., 504 U.S. 374, 388-89, 112 S.Ct.
2031, 119 L.Ed. 2d. 157 (1992), American Airlines, Inc. v. Wolens, 513 U.S. 219, 228, 115 S.Ct. 817,

27   130 L.Ed. 2d. 715 (1995), and In Re Jetblue Airways Corp. Privacy Litigation, 379 F.Supp.2d 299
(E.D.N.Y. 2005).

28   [7] RLC and RTC have different numbers issued by the U.S. Department of Transportation.  (McCuan
Decl. ¶15.)

400 persons.  Such unsupported speculation does not constitute actual facts – i.e., the "actual, sufficient evidence" – necessary to satisfy the numerosity requirement.[8]

**Second,** Plaintiffs have failed to demonstrate under Rule 23(a)(2) that the proposed class would generate common answers to common questions.  It is not enough, as Plaintiffs claim, simply to assert common questions; "[r]eciting [common] questions is not sufficient to obtain class certification … **What matters to class certification . . . is not the raising of common 'questions' – even in droves** – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Wal-Mart, *supra,* 131 S.Ct. at 2550-51 (emphasis added); *see* Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1442, 1431 ("[F]indings as to one [grocery] manager could not "reasonably [be] extrapolate[d]" to others, given **the significant variation in the work performed by grocery managers from store to store and week to week, as shown by defendant's evidence.**")(emphasis added)[9]; *see also* Cole v. Crst, Inc., 2012 U.S. Dist. LEXIS 144944, *19-22 (C.D. Cal. 2012)(decertifying drivers' minimum wage class because, under defendant's "Activity-Based Pay" system, "an individualized inquiry is required, not only to

---

[8]   *See* Rupe v. Beard, 2013 U.S. Dist. LEXIS 31139, *7 (E.D. Cal. Mar. 5, 2013)(numerosity requirement not met); Arrunategui v. ConocoPhillips Co., 2010 U.S. Dist. LEXIS 142237, *13 (C.D. Cal. 2010) (same); and Ctr. of Surrogate Parenting, Inc. v. Circle Surrogacy, Ltd., 2012 U.S. Dist. LEXIS 85033, *2-3 (C.D. Cal. 2012)(same).

[9]   *See also* Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. Fla. 2009)(denying class certification; common issues did not predominate, because adjudication would be **"swamped by individual factual inquiries into the activities of each employee"**; "[C]ommon issues will not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." … Certification is inappropriate if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.")(emphasis added; denying class certification); and Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 376, 2013 U.S. App. LEXIS, 2393, *15 (8th Cir. Feb. 4, 2013)("[D]emonstrating the invalidity of one manager's uses of discretion will do nothing to demonstrate the invalidity of another's."), *citing* Wal-Mart, *supra.*

3

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   determine the amount of damages, but to determine whether CRST is liable for not

2   paying minimum page.").

3       Here, even within Victorville itself, sufficient commonality does not exist,

4   given the variety of fact-intensive inquiries that the Court would have to analyze and

5   to determine if a common policy or practice exists concerning how and why each

6   plaintiff was paid what they received.[10]  Nor does Commonality exist with respect to

7   the three RLC terminals (Victorville, Alhambra[11], and the interstate "long-haul"

8   Ripon terminal), because all have different compensation policies and Victorville is

9   unionized (and the other two are not).  (Schott Decl. ¶¶9, 10.)

10      In fact, there are variations and differences among the Plaintiffs alone in how

11  drivers note their pre- and post- trip inspections and how inspections were actually

12  performed.   Some drivers combine these inspections with other tasks, such as

13  drop/hooks to receive compensation; others do not.  For example, if drivers were

14  paid for drop and hooks before leaving the yard, their $10 pay covered 1-1/2 hours

15  of pre or post driver activities.  (Devereaux Decl. ¶¶2-4.)  From Plaintiffs' Daily

16  Trip Sheets and Logs, it also appears that some drivers on some routes fuel (which

17  does not exceed 15 minutes time), and other drivers on other routes do not fuel.

18  (Devereaux Decl. ¶7.)  Sometimes these were combined with CIPs which provided

19  pay for fueling, with time left over, to pay for other tasks.  Some drivers recorded or

20  assigned no post-trip inspections.  These and other individualized inquiries go not

21  only to the issues of possible damages, but to the predicate issue of whether there is

22  liability at all.   And if RLC's Victorville terminal intended its Activity Based

---

[10]   Fact-intensive individualized inquiries include: different dispatchers creating different driving schedules for each driver; different ways in which individual drivers recorded what tasks they had performed (including pre- and post-trip activities) and how long it took them to perform those tasks; different drivers' understandings of what they thought (and agreed) their various pay elements covered under RLC's compensation policies, and how different dispatchers on different shifts may have instructed individual drivers regarding pre- and post-trip issues as well as delay time issues.

[11]  Geographically speaking, the only RLC terminal (with an ABC plan) that would be venued within this Court's district is the RLC Alhambra terminal.

Compensation ("ABC") plan to pay for non-driving activities, and its drivers understood and agreed to the ABC plan, then there is a binding contract, and no liability.[12]  Attempting to add two RLC terminals or RTC terminals to the class only further highlights the lack of commonality.[13]

**Third,** Plaintiffs have failed to establish their claims are typical of those claims of other, absent proposed class members.[14]  Typicality is not met where, as here, absent class members will suffer if their class representatives are preoccupied with claims or defenses unique to the representatives.[15]

For example, six of the plaintiffs (Ricky Crawford, Neva Crawford, Bill McMahon, Dante Steward, Tony Skirrow, and Dan Ware) and their "witness" Eric Senf were involuntarily terminated,   Moreover, with the most active plaintiff – Neva Crawford – directly linking this class action to her termination (Pfeifer Decl., ¶¶3, 4), her motive to punish RLC and run up attorneys' fees and penalties, cannot be deemed typical when over 71% of the putative class (outside of the named plaintiffs) have opted to settle now.[16]  Plaintiffs who are past employees are not typical of the present drivers, who are represented by a union seeking to negotiate

---

[12]  **"The problem is, we do not know exactly what was said to each driver … before they started driving, let alone what they understood what they were told to mean.  To be amenable to class treatment, each driver would have to have been told the same thing …** There is no way to determine whether any driver was not paid at least minimum wage without an individualized inquiry into each trip and/or day."  Carson v. Knight Transportation, Tulare County Sup. Court Case No. VCU234186 (August 30, 2012 Order Granting Defendant's Motion To De-Certify Class, at pp. 3-4; emphasis added)(Exh. "A" to RLC's RJN in Opp. to Class Cert. Motion.)

[13]  The impropriety of adding RLC or RTC terminals at this stage is demonstrated by the fact that Plaintiffs know nothing about the pay plans of other terminals other than their own.  In fact, RLCs Alhambra terminal uses ABC for interstate runs.  Only two RTC terminals use ABC, and then only on one long haul or interstate drivers.

[14]  "The commonality and typicality requirements … tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Wal-Mart, supra, 131 S.Ct. at 2551, n. 5.

[15]  The three RLC terminals are (either in whole or in part) interstate operations whereas many of the other RTC terminals are purely intrastate operations.  Moreover, Victorville is now the only one of the three RLC terminals that unionized.  While the 18 RTC terminals are all unionized, they have different Collective Bargaining Agreements (CBAs") with different compensation policies, only two of which use any form of ABC.

[16]  McCuan Supp'l Dec., ¶¶4-5.

5

1    the terms and conditions going forward, and who hope that RLC will have the funds

2    necessary to improve or maintain compensation levels.  At least one of the currently

3    employed Plaintiffs wants out or possibly was offered an extra incentive to stay.

4    (Schott Decl. ¶11; Bronchetti Decl. ¶¶2, 3, 5.)   Accordingly, Plaintiffs cannot

5    demonstrate typicality.[17]

6        **Fourth,** Plaintiffs have failed to demonstrate under Rule 23(a)(4) that they

7    will fairly and adequately protective the interests of the proposed class.  Adequacy

8    requires determining the answer to two questions: "(1) Do the representative

9    plaintiffs and their counsel have any conflicts of interest with other class members,

10   and (2) will the representative plaintiffs and their counsel prosecute the action

11   vigorously on behalf of the class?"[18]

12       Adequacy requires, among other things, **"an absence of antagonism [and]**

13   **a sharing of interests between representatives and absentees[.]"**[19]  As this Court

14   has recognized, "[a] plaintiff is not an adequate representative if a "fundamental

15   conflict" exists among a class."   **"A conflict is "fundamental" [where] some**

16   **plaintiffs claim to have been harmed by the same conduct that benefited**

17   **[others]."**[20]

18       Numerous such conflicts exist here.  Using the class period sought by

19   plaintiffs (May 2, 2008 to the present), at least 71% of class members at Victorville

20   (not including Plaintiffs themselves) have already settled;[21] any attempt by the

21   named class representatives to unwind these settlements, which they have threatened

22

---

[17] *See* Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)(typicality not met due to purported class representative's "unique background and factual situation"); *see also* Mazur v. Ebay Inc., 257 F.R.D. 563, 568-9 (N.D. Cal. 2009)(no typicality where different plaintiffs interacted with different defendants in various ways).

[18] Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *27.

[19] Mazur, *supra*, 257 F.R.D. at 569.

[20] Id. at *29 (emphasis added), *citing* Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) and Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P., 247 F.R.D. 156, 177 (C.D. Cal. 2007).

[21] Using Defendant's period (May 2, 2009 to present), over 71% of the putative class have settled (not including Plaintiffs).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  to try to do, would clearly conflict with the wishes of the class members who have

2  already settled.[22]  Class members who are former employees may seek to recover

3  significant monetary sums for inflated past claims (including waiting time penalties),

4  while current employee class members have elected a union to represent them with

5  respect to the employees' compensation and other work conditions.[23]  One of the

6  named plaintiffs – Jody Paulson, who is on the Victorville union's bargaining

7  committee – has stated that she wants out of this case, expressing her concern that

8  the putative class action litigation will have adverse effects on the drivers going

9  forward.  She has expressed, in writing, her intent to withdraw from this lawsuit

10 and to urge others to do the same.  (Bronchetti Decl. ¶4, Exhs. A, B), and informed

11 the company, on February 5, 2013, that she had sent a certified letter to her

12 attorney in this case demanding her removal.  (Fries Decl. ¶6.)  Ms. Paulson's

13 stated intentions "mirror" at least 71% of the purported class of current and former

14 Victorville drivers (excluding the Plaintiffs) who have already accepted settlements

15 from RLC and signed releases.[24]  Indeed, potential members of the class have

16 benefited from RLC's ABC plan, and do not wish to be part of this class action.

17 (Pfeifer Decl. ¶¶11-12.)[25]

18     Nevertheless, Plaintiffs' counsel has threatened to try to unwind these

19 settlements.

20

21

---

22 [22] "[N]o circuit approves of class certification where some class members derive a net economic
23 benefit from the very same conduct alleged to be wrongful by the named representatives of the class[.]"
   Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *29.
   [23] Plaintiffs, *inter alia*, admit they did not answer interrogatories *to avoid giving "a preview"*, i.e.,
24 facts, regarding their class action motion due a few days later.  Gitt Decl., ¶28.  Conversely, current
25 employees may wish to seek injunctive relief which former employees have no standing or interest to
   seek.
26 [24] On January 31, 2013, 118 settlement offers were mailed to current and former Victorville drivers
   who are members of the potential class.  (Fries Decl. ¶¶3-5.)  Of the 118 offers mailed out, 7 could not be
27 delivered, and 84 drivers (i.e. 71%) accepted the settlement offer and provided signed releases.  Settlement
   checks have been sent to all settling drivers.  (Larsen Decl. ¶¶4-6.).
28 [25] Since 2009, RLC has explained its ABC plan to applicants and new hires, and what is covered by
   the plan.  No one objected to the ABC plan during this process.  (Pfeifer Decl. ¶¶9-10.)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1      These conflicts raise grave doubts about whether the representative plaintiffs

2  and their counsel will prosecute the action vigorously or fairly on behalf of the class.

3  Plaintiffs' counsel, while clearly proficient at settling cases favorable to himself

4  (Gitt Decl., ¶9) also provides no evidence that he actually takes class action cases to

5  trial, which undermining any assertion that Mr. Desai would "prosecute the action

6  vigorously" as required under Rule 23(a)(4).   (Gitt Decl. ¶¶37-38.)   Plaintiffs'

7  compensation claims attack the standard compensation structure used in interstate

8  trucking, threatening RLC's ability to compete in interstate commerce.   (Bronchetti

9  Decl. ¶¶2, 3, 5; Schott Decl. ¶11.)   Settlement – Mr. Desai's specialty – is not a

10  likely solution to that issue.

11      Indeed, Mr. Desai seems to ignore the particular facts of his trucking cases,

12  and instead "clones" complaints and declarations (such as <u>Cardenas</u>, or <u>Genesis</u>

13  <u>Logistics</u>, another pending case with a virtually identical Complaint to this case).

14  By ignoring the specific facts of this case, Plaintiffs are jeopardizing the outcome.

15  On the other hand, Plaintiffs generate costly and unnecessary law and motion work,

16  such as his improper ex parte applications which generate excessive and unnecessary

17  costs to defend.   (Gitt Decl.   ¶¶29-30.)

18      In addition to engaging in other questionable litigation and deposition tactics,

19  Plaintiffs and their counsel have repeatedly obstructed RLC's efforts to conduct

20  discovery in this matter, such that RLC has to oppose this motion for class

21  certification without the benefit of having deposed Plaintiffs or receiving

22  Interrogatory responses regarding class issues.   (Gitt Decl. ¶¶15-30, Exhs. J-Q.)   On

23  the other hand, to generate additional fees by making improper motions and,

24  conversely, by raising issues that were never heretofore alleged in the complaint or

25  discussed in discovery, Mr. Desai has now raised a belated, meritless "joint

26

27

28

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

employer" theory of liability against RLC[26], as well as the meritless claim that drivers were required to purchase their own work boots.

Furthermore, while Mr. Desai couches this case as primarily an enforcement action for PAGA penalties, the past class action settlements he cites in his supporting declaration indicate that in fact he structures his settlements so that the threatened PAGA penalties are recharacterized as attorneys' fees payments to him, contravening his fiduciary duty as "private attorney general" to submit 75% of PAGA penalties to the state of California.  (Gitt Decl. ¶¶37-38.)[27]

**Finally,** Plaintiffs have failed to establish under Rule 23(b)(3) that the "far more demanding" requirement[28] that common issues predominate over individual issues, and that a class action is a superior means of adjudicating this controversy. This is a qualitative, not a quantitative, assessment.  "In determining superiority, courts must consider the four factors of Rule 23(b)(3).[29]  "Superiority" exists under Rule 23(b)(3) only if Plaintiffs actually prove that the class action is "superior – "not just as good as" – other available methods of handling the controversy."[30]  "[T]he court [must] focus on the efficiency and economy elements of the class action so that cases allowed under [23(b)(3)] are those that can be adjudicated most profitably on a representative basis."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001), as amended, 273 F.3d 1266 (9th Cir. 2001).  **"If each class member has to litigate numerous and substantial separate issues to establish his**

---

[26]   Instead of trying to bootstrap unnamed defendants into a class certification motion, Plaintiffs should have brought a formal motion to add new defendants.

[27]   See In Re Hotel Telephone Charges, 500 F.2d 86, 91 (9th Cir. 1974)("Considering that this action has been primarily generated … by the lawyers who possibly stand to realize astronomical fees … Whenever the principal … beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming **class action is hardly the superior method for resolving the dispute.**")(emphasis added).

[28]   See Anaheim Prods Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

[29]   The factors are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

[30]   Saunders v. Trattoria, 2007 U.S. Dist. LEXIS 97193, *3 (C.D. Cal. 2007); see also Abby v. City of Detroit, 218 F.R.D. 544, 549 (E.D. MI. 2003)(same).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

or her right to recover individually, a class action is not "superior." (Id.; emphasis added.)[31]

In this case, even if a "uniform" policy arguably exists in theory (though not necessarily in application) at Victorville, that does not mean that common issues predominate; individual inquiries to determine what various plaintiffs actually did and whether they were compensated will still predominate.[32] , Plaintiffs have made absolutely no showing that a class action would be superior to adjudication of Plaintiffs' individualized claims in separate lawsuits or in administrative venues such as the DLSE; see Dunbar, supra, 141 Cal.App.4th at 1426,[33] or even to this Court.

Additionally, courts at every level[34] have frowned upon Plaintiffs' suggestion that this case be tried by representative "sampling", which raises

---

[31] See also Vinole v. Countrywide Loans, 571 F.3d 935, 944, 946-948 (9th Cir. 2009)("[a]ny dispute as to how employee actually spends . . . time, of course, has the potential to generate individual issues).

[32] See Marlo v. United Parcel Service, Inc., 639 F.3d 942, 948 (9th Cir. 2011)(Plaintiff failed to satisfy burden of establishing predominance of common issues by submitting evidence of "uniform policies and procedures" because **even a "blanket" policy "does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties."**)(emphasis added), and at 949 (Common issues are *not* predominant where the evidence "suggest[s] **variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases."**)(emphasis added). *See also* Tijero v. Aaron Brothers, Inc., 2012 U.S. Dist. LEXIS 183238, *19 (N.D. Cal. 2013)("[U]nder Rule 23(b)(3), Plaintiffs must offer more than vague references to Defendant's "general policies" ... "Whether such a policy is in place or not, **courts must still ask where the individual employees actually spent their time."**)(emphasis added; plaintiffs failed to establish predominance or superiority under Rule 23(b)(3)).

[33] Class certification denied, where trial court held "that common issues did not predominate, and that a class action was not the superior means of resolving the litigation ... a class action was not necessary to deter and redress the alleged wrongdoing, and ... **there were alternative procedures for handling the controversy, including administrative adjudication. The court thought that "the different factual circumstances of the absent class members in this case will require their active participation in the resolution of their claims.""**)(Emphasis added.)

[34] See Wang v. Chinese Daily News, Inc., 2013 U.S. App. LEXIS 4423, *15 (9th Cir. Cal., March 4, 2013) ("In *Wal-Mart*, **the Supreme Court disapproved what it called "Trial by Formula,"** wherein damages are determined for a sample set of class members and then applied by extrapolation to the rest of the class "without further individualized proceedings.""")(original italics; bold emphasis added); *see also* Dailey v. Sears, Roebuck and Co. (March 20, 2013) 2013 Cal.App. LEXIS 219, *53 (**"We have found no case ... where a court has** deemed a mere proposal for statistical sampling to be an adequate evidentiary *substitute* for demonstrating the requisite commonality, or **suggested that statistical sampling may be used to manufacture predominate common issues where the factual record indicates none exist.** If the commonality requirement could be satisfied merely on the basis of a sampling methodology proposal

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  serious due process concerns. Indeed, with such a small class, a valid sample
2  would have to be virtually co-extensive with the class), offering no benefit.

3  **II.    FACTUAL BACKGROUND**

4  **A.   Plaintiffs' Class Certification Motion Is Premature**

5      Initially, RLC respectfully submits that this class certification motion is
6  premature. RLC seeks partial summary judgment in this case on the grounds that
7  the FAAAA preempts Plaintiffs' state meal and rest break claims and other
8  compensation claims, and that (as an interstate motor carrier) RLC's ABC plan
9  complies with federal law, which preempts state law. If the Court confirms its
10 tentative ruling and holds that Plaintiffs' compensation claims are not preempted
11 by the FAAAA, RLC will ask this Court to certify these issues for interlocutory
12 appeal.[35] Accordingly, in the interests of judicial economy, RLC requests that
13 Plaintiffs' class certification motion be stayed. In the alternative, RLC respectfully
14 requests that a ruling on this motion be stayed to allow RLC to depose Plaintiffs,
15 since Plaintiffs and their counsel have obstructed RLC's discovery efforts to date.
16 (Gitt Decl. ¶¶ 19-29.)

17 **B.    There Was And Is No One "Ruan" Compensation Policy**
18 **Governing The 3 RLC Terminals**

19     There is no company-wide or California-wide compensation policy, or ABC
20 policy. The ABC policy that applies to Plaintiffs is unique to the Victorville
21 terminal. In August 2012, Teamsters Local 63 was certified as the collective
22 bargaining representative for the drivers at the Victorville terminal. The terms of
23 the compensation of the drivers that are currently under negotiation will create
24 additional preemption issues not common to other RLC terminals or to the past

25

26 such as the one before us, it is hard to imagine that any proposed class action would *not* be
   certified.")(emphasis added).
27 [35] Moreover, the exact issue of whether the FAAAA preempts state meal and rest break claims is
   presently pending before the Ninth Circuit in the <u>Dilts v. Penske</u> matter. As Plaintiffs note in their
28 motion, they are not seeking class certification of their meal and rest break claims, "unless the Court
   reverses itself."

1  employees at Victorville.  (Schott Decl., ¶9; Gitt Decl. ¶34; Bronchetti Decl. ¶¶2-

2  5.)

3       RLC's Alhambra terminal has ABC component payable only when drivers

4  leave the State of California in interstate commerce.  The business of the Alhambra

5  terminal is different from the dairy products hauled at Victorville.  Victorville is

6  exclusively interstate commerce, whereas at the Alhambra terminal, some of its

7  drivers haul intrastate, while some haul to Nevada and Utah.  The interstate driving

8  has an ABC plan, but intrastate does not.  Alhambra's ABC plan is different from

9  the plan at issue here; for example, it pays separately for driving time and time

10  spent on all non-driving

11  activities.  (Schott Decl. ¶10.)[36]

12       **C.    There Was No One "Ruan" Policy Regarding Work Boots Or**

13           **Milk Coolers**

14       Like their belated "joint employer" theory, Plaintiffs raise – for the first time

15  in their class certification motion – the claim that they were required to purchase

16  work boots at their own expense.  This claim is not alleged in their Complaint or in

17  the Joint Rule 26 Report to the Court and was never in discussions with RLC's

18  attorneys or in any discovery.   Plaintiffs are simply grasping for straws and

19  attempting to sandbag RLC by raising this issue for the first time in this motion.

20  "Class certification is not a time for asserting new legal theories that were not

21  pleaded in the complaint."  Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *19-20.

22       Prior to mid-2012, there was no uniform RLC policy mandating that drivers

23  purchase work boots, or that they use their own money to do so.  (McCuan Decl.

24

25  ───────────────

   [36] With respect to RTC terminals, all 18 RTC terminals are unionized and have different CBAs.  All but
26  two of the CBAs provide for hourly pay to drivers.  Of the two CBAs that provide for some activity-based
   pay, only one CBA, the activity-based provision comes into play *only when the drivers leave the State of*
27  *California in interstate commerce.*  The other comes into play only when a certain number of miles has been
   exceeded. These two agreements are different from each other, but they both also provide for overtime pay
28  at time and a half in addition to the hourly pay or activity-based pay, unlike the compensation plan at
   Victorville/Adelanto. (Schott Decl. ¶9.)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

¶6; Pfeifer Decl. ¶5; Schott Decl. ¶5.)  Victorville drivers simply were advised to wear boots, preferably waterproof.[37] No reimbursement exists or was requested in these circumstances.  Beginning in approximately June 2012, dairy drivers for the first time were required to wear boots with reinforced (not steel) toes to improve safety.  The company pays for these boots.[38]  (McCuan Decl. ¶5; Pfeifer Decl. ¶6; Schott Decl. ¶6.)

With respect to milk sample coolers, RLC's Alhambra terminal does not haul dairy products.  At Victorville, coolers were always provided, except for a period of approximately eighteen (18) months.  RTC terminals also provided sample coolers to their drivers. (McCuan Decl. ¶8.)  After learning from plaintiffs' Complaint in this case that some drivers had to purchase their own coolers at Victorville, RLC immediately reimbursed all drivers who said they bought coolers. (Declaration of Randall Webster [Exh. G to Declaration of Cynthia Gitt, ¶8], McCuan Decl. ¶7; Pfeifer Decl. 7; Schott Decl. ¶7.)

**D.    RLC Must Rely On Its Drivers To Accurately Record The Time Records Upon Which The Drivers Are Paid**

The only real compensation issues in this case are (1) whether drivers must be separately compensated for the pre and post trip inspections that Federal law requires in order for DOT licensed vehicles to be operated in interstate commerce, and (2) if so, whether Plaintiffs and other drivers actually were compensated for their activities.  Plaintiffs' own Trip Sheets establish that this documentary evidence are far more credible evidence (the "Best Evidence") of the boilerplate, uncorroborated self-serving declarations.  Many of RLC's drivers are paid for the non-driving activities they perform, including the few seconds (at most a minute) it generally takes to locate a truck at the Victorville terminal or to walk to it from the

---

[37]  Pfeifer Decl. ¶5; McCuan Decl. ¶¶5-6; Schott Decl. ¶¶5-6.
[38]  If drivers choose to purchase boots that are more expensive than those offered by the company, they are free to do so but anything above $140 would be at their own expense.  (Schott Decl. ¶6.)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  office or the parking lot.  (McCuan Decl. ¶¶ 9-14, Exhs. C, D.)  Drivers are also

2  paid for both delay time and for attending safety meetings. (Devereaux ¶¶ 5-6.)[39]

3        Drivers carry these sheets with them as they drive their routes, and they are

4  directed to fill them in as they change their activities.  At Victorville, local staff

5  inputs information from the daily trip sheets[40] submitted by the drivers on a daily

6  basis.  The pay for Victorville drivers is calculated based on the factors they note on

7  the sheet, i.e. miles driven; numbers of drop and hooks, number of pick-ups (single

8  and additional), number of deliveries, number of CIP's (Clean in Place outside a

9  delivery facility), delay time, layovers, and other reimbursement items. By necessity,

10  the drivers have complete control over the times entered on these daily trip sheets.

11  The company usually must rely on the drivers' statements. (Ingram Decl. ¶3.)[41]

12

13        The Trip Sheets for just the Plaintiffs show a great deal of variation and

14  differences in how drivers note their pre and post trip inspections, and how these

15  inspections were actually performed. (Devereaux Decl. ¶¶2-4, 7.)  No time at all is

16  shown for many post-trip inspections, and Redtrak reports also indicate that some

---

18   [39]  With respect to delay time pay, some drivers, including the plaintiffs in this case, may have
19  manipulated the delay time process by taking longer than usual to perform their tasks. (Pfeifer Decl. ¶
    10.)
20   [40]  The daily trip sheets contained itemized daily wage information about what monies Plaintiffs had
    earned for particular work performed.  The Department of Transportation's ("DOT") federal "Hours of
21  Service" regulations applicable to Victorville drivers also require that drivers record their hours of service
    (i.e., work) each day on DOT "daily logs", which the driver must have available at all times for inspection
22  by law enforcement officers at any time.  The driver must record when he or she is on duty, driving, not
    driving or off duty, as well as starting and ending time and miles driven.
23   [41]  In 2009, the company implemented a tracking program called Redtrak, which is supposed to record
    various activities such as actual starting time, departure time, arrival times at dairies and processing
24  plants, departure times from dairies and processing times, breaks, off-duty times, etc. It was hoped that
    the departure and arrival times in particular could be automatically recorded at the yard and at the dairies
25  and creameries. However, thus far, this system has been proved to be unreliable, especially in remote
    areas where there is not good cell coverage, as is particularly the case in many of Victorville's routes.
26  (Ingram Decl. ¶4.)  The system also is subject to driver error, e.g., on many occasions the drivers log into
    the system hours before their scheduled starting time (likely to find out their assignments for the day) but
27  never log off, so that their actual starting time is not recorded.  Drivers "forget" to make entries and may
    not do so until long after they have actually departed from or arrived at particular places. For these
28  reasons, Redtrak is not sufficiently reliable to be used for compensation purposes or even to determine
    precisely when or for how long activities were performed. (Ingram Decl. ¶¶5-6, Exhibit A.)

Factual commonality is lacking also as Plaintiffs now seek to expand their claims to other terminals they know nothing about.  Plaintiffs were not affected by ABC policy other than at Victorville; they lack standing to bring both PAGA claims and to represent drivers working under different systems and different circumstances.   As described and demonstrated above by RLC, at a minimum individualized, fact-intensive inquiries would be required as numerous issues that go not just to the issue of damages, but to predicate issues of liability itself.  For example,

- What are the compensation policies and practices and how do they differ both amongst the 3 RLC terminals?

- How do driver operations differ as to interstate and intrastate commerce?

- How do the compensation policies with partial ABC's relate to Victorville interstate commerce status?

- What were different drivers' understandings of what they thought they were getting paid for under the compensation policies?

- Were any drivers prevented from earning "piece-rates" by ancillary activities?

- Are the CBA provisions for partial ABC preempted by the Labor Management Relations Act?

- What were the different ways in which individual drivers recorded what tasks they had performed (including pre- and post-trip activities)?

- Did the drivers get compensated minimum wage for non-driving tasks?

- How long did it take different drivers to perform different tasks?[45]

---

paid at least minimum wage *for the period of time an employee's opportunity to earn commissions or piece-rate is reduced.*

[45]  Where, as here, RLC must depend to such a large degree on the accuracy of the *employees'* keeping accurate records on their individual daily trip sheets of what work each driver performed (Ingram Decl., ¶¶ 3-8), it is the employees' burden to prove he or she in fact that they claim they were not adequately compensated for. and for the period.  California Code of Regulations, Title 8, Section 13520.

19

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  of the plaintiffs in this case have listed the same times for arrival back at the yard

2  and for check out, suggesting either that they are not entering accurate data, or they

3  are performing no post-trip inspections at all.   (Ingram Decl. ¶¶ 7-8, Exh. B.)

4  Several Plaintiffs manipulate the system by linking pre-trip inspections to drop-

5  and-hooks.

6  ### III.   LEGAL ARGUMENT

7        "A class action may only be maintained if all four subparts of Rule 23(a) are

8  satisfied and if one of the three subparts of Rule 23(b) is satisfied." Brown, *supra*,

9  2011 U.S. Dist. LEXIS 99495, *19-20.   The moving party must affirmatively

10  demonstrate, with sufficient evidence, that the proposed class *in fact* complies with

11  Rule 23; *see* Wal-Mart, *supra*, 131 S.Ct. at 2551-52, Brown, *supra*, 2011 U.S. Dist.

12  LEXIS 99495, *19-20, and Mahfood, *supra*, 2008 U.S. Dist. LEXIS 105229, *8-9.

13        Here, Plaintiffs have failed to satisfy the required Rule 23(a) elements –

14  numerosity, commonality, typicality, and adequacy.   They have also failed under

15  Rule 23(b)(3) to satisfy their burden of demonstrating both that: (1) common

16  questions of law or fact predominate over individual questions, and that (2) a class

17  action is a superior method for fairly and efficiently adjudicating the controversy.

18  Accordingly, Plaintiff's motion for class certification must be denied.

19  ### A.   Plaintiffs' UCL Claims Are Preempted By The FAAAA

20        Plaintiffs seek class certification with respect to their UCL claims.   Because

21  the UCL carries a 4-year statute of limitations, Plaintiffs attempt to define their

22  class as dating back to May 2, 200**8**, increasing the numbers.

23        The UCL is preempted by FAAAA, and therefore has no merit and cannot

24  form a basis for Plaintiffs' class certification motion; *see* Fitzgerald v. Skywest, Inc.

25  (2007) 155 Cal.App.4th 411, 423 (§17200 cause of action preempted by provision in

26  federal Airline Deregulation Act preempting laws "related to a price, route, or

27  service" of air carriers), *citing* Morales, *supra*, 504 U.S. at 388-89, American

28  Airlines, Inc., *supra*, 513 U.S. at 228, and In Re Jetblue, *supra*, 379 F.Supp.2d 299.

1   Therefore, the UCL cannot form the basis for Plaintiffs' class certification motion.

2   Accordingly, the proposed class should begin, if at all, May 2, 2009, not May 2,

3   2008. Ellis, *supra*, 657 F.3d at 981 (original italics).

4   **B.   Plaintiffs Have Failed To Establish That The Class Is So Numerous That Joinder Of All Members Is Impracticable Under Rule 23(a)(1)**

5   "First, Plaintiff must establish that "the [proposed] class is so numerous that

6   joinder of all members is impracticable[.]"" Rupe, *supra*, 2013 U.S. Dist. LEXIS

7   31139, *7 (numerosity requirement not met). "The central question is whether [a

8   plaintiff has] sufficiently identified and demonstrated the existence of the numbers

9   of persons for whom they speak." Id.   "Mere speculation … is not sufficient."

10  Id.; *see also* Arrunategui, *supra*, 2010 U.S. Dist. LEXIS 142237, *13 (numerosity

11  not met; "Plaintiffs must put forth more than mere speculation[.]"); and Ctr. of

12  Surrogate Parenting, Inc., *supra*, 2012 U.S. Dist. LEXIS 85033, *2-3 (Plaintiff

13  "bears the burden of making some showing affording the district court the means

14  to make a supported factual finding, that the class actually certified meets the

15  numerosity requirement.").

16  Here, Plaintiffs have failed to satisfy the numerosity requirement.  Plaintiffs

17  claim, without factual support, that the class consists of "approximately 250-400

18  class members[.]" (Plaintiffs' Motion at 9:10-16.).  Even though the correct date

19  for the beginning of any proposed class is May 2, 2009, RLC – out of an

20  abundance of caution – used May 2, 2008 as the starting point to determine the size

21  of the potential class members to whom it would send settlements.  The company

22  mailed out 118 settlements; 7 could not be delivered.  Out of the 118 settlements

23  mailed out, to date 84 potential class members have already settled and released

24  any potential claims against RLC.  Plaintiffs clearly have failed to carry their

25  burden of demonstrating that the class is so numerous that joinder is impracticable.

26  In the parties' Joint Rule 26 Report, Plaintiffs and their counsel represented

27  to this Court that "Plaintiffs do not contemplate adding additional defendants at

28  this time, although they may seek to add additional named plaintiffs."  (Gitt Decl.

1   ¶14, Exh. I, Docket No. 11.) Now, realizing their numerosity problems they want

2   to attempt to lasso in other RLC terminals, and another company besides RLC,

3   Plaintiffs now advance a "joint employer" theory, not by a proper motion, but by

4   random observations that certain company documents included the name of more

5   than one Ruan entity.[42]  Plaintiff Neva Crawford's breathless announcement that

6   she saw an RTC truck at RLC's Victorville terminal is entirely irrelevant since

7   drivers from RTC's Tulare terminal sometimes deliver milk from Bakersfield to

8   Victorville to be delivered out of state. (Schott Decl. ¶8; McCuan Decl., ¶16.)

9   Plaintiffs raised no "joint employer" issues in the Joint Rule 26 Report to the

10  Court, in which they stated in that they did not plan to add any more entities; they

11  have made no effort to join RTC as a defendant, and they have conducted no

12  discovery regarding this issue; all discovery to date has focused on Victorville. (Gitt

13  Decl. ¶¶14-33, Exhs. I-M.) Determining whether the two entities may be considered

14  "joint employers" requires a separate motion, accompanied by fact-intensive

15  consideration of the facts, focusing on four primary factors: "whether the alleged

16  employer (1) had the power to hire and fire employees, (2) supervised and controlled

17  employee work schedules or conditions of payment, (3) determined the rate and

18  method of payment, and (4) maintained employment records." Pfohl v. Farmers Ins.

19  Group, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. 2004). Plaintiffs have no evidence

20  that any (much less all) of these factors have been met here.

21      **C.  Plaintiffs Have Failed To Establish That A Class Would Generate
        Common Answers To Common Questions Under Rule 23(a)(2)**

22      The commonality requirement "is easy to misread" because "[a]ny

23  competently crafted class complaint literally raises common questions." Wal-

24  Mart, supra, 131 S.Ct. at 2550-51, citing F.R.C.P. 23(a)(2). But "[r]eciting

25  [common] questions is not sufficient to obtain class certification." Id. at 2551.

26

27

28      [42]  Plaintiffs' evidence establishes nothing except that the Victorville Terminal uses forms with different names including the previous owner, Hartman. Such evidence does not equate to employment.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1      Rather, commonality requires the plaintiff to demonstrate that the class

2   members "have suffered the same injury." Id. "[Commonality] **does not mean**

3   **merely that they have all suffered a violation of the same provision of law**. Id.

4   Rather, the plaintiff's claims must not only "depend upon a common contention …

5   **[the] common contention … must be of such a nature that it is capable of**

6   **classwide resolution – which means that *determination of its truth or falsity will***

7   ***resolve an issue that is central to the validity of each one of the claims in one***

8   ***stroke.*** Id. (emphases added). "What matters to class certification . . . is not the

9   raising of common 'questions' – even in droves – but, rather the capacity of a

10  classwide proceeding to generate common *answers* apt to drive the resolution of

11  the litigation. Dissimilarities within the proposed class are what have the potential

12  to impede the generation of common answers." Id.[43]

13                    d. **Compensation And Waiting Time**

14      There obviously is a pending legal question as to the ABC Plan system at

15  Victorville: is California law, whatever it turns out to be. preempted by the

16  FAAAA and other laws making competitiveness in interstate commerce as a matter

17  of law an overriding federal policy.  Defendant already has indicated that it will

18  ask the Court to certify the question for interlocutory appeal, should this Court find

19  no preemption, which will apply to the parties and others like them without class

20  certification.

21      Even if there is no preemption  as a matter of law, numerous individual fact

22  inquiries would be necessary to determine if the California law affects rates, routes

23  and services, and if not, whether California applies to each class member because

24  they have been prevented from "piece-rate" by the ancillary activities.[44]

25

26      [43] *See also* Dunbar, *supra*, 141 Cal.App.4th at 1431 ("[F]indings as to one [grocery] manager could
27  not "reasonably [be] extrapolate[d]" to others, given the significant variation in the work performed by
    grocery managers from store to store and week to week, as shown by defendant's evidence.").
28  [44] See Balasanyan v. Nordstrom, Inc., 2012 U.S. Dist. LEXIS 181350 (S.D. Cal., Dec. 20, 2012. *14-16
    (citing Armenta v. Osmoce 135 C.A.4th 314, 322-24 (2005) and DLSE Manual§47.7 (employee must be

18

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   •    How did different dispatchers (on different shifts) instruct individual drivers

2       with respect to pre- and post-trip issues as well as delay time issues?

3   •    If RLC failed to pay a driver his or her wages, was the failure to pay a result

4       of a "good faith" dispute that would preclude imposition of waiting time

5       penalties under California Labor Code § 203?

6       Where, as here, RLC must depend to such a large degree on the accuracy of

7   the *employees'* keeping accurate records on their individual daily trip sheets of

8   what work each driver performed (Ingram Decl. ¶¶3-8), it is the *employees'* burden

9   to prove what work he or she in fact that they claim they were not adequately

10  compensated for.[46]

11      Such highly fact-specific inquiries to determine basic, foundational liability

12  issues as to each individual driver will not generate "common answers" to

13  "common questions."[47]  "To the extent that any putative class members were

14  injured … this injury would vary in cause and scope from person to person, thus

15  necessitating individualized inquiries."  <u>Brown</u>, *supra*, 2011 U.S. Dist. LEXIS

16  99495, *35.  Accordingly, Plaintiffs have failed to demonstrate commonality.

17  **ii.  <u>Work Boots And Milk Coolers</u>**

18      There also was no common policy requiring drivers to purchase work boots

19  or milk coolers.  The Company's policy is to provide the milk coolers; any failure

20  to do so was oversight (for which drivers already have been compensated).  This

21  would affect only drivers whose coolers had been damaged or lost.  Beginning in

22

23      [46] *See* <u>Yang v. Shanghai Gourmet, LLC</u>, 2012 U.S. App. LEXIS 5464, *787 (9th Cir. 2012) (Where employer's records are inaccurate, employee must first carry burden of "prov[ing] that he has in fact

24  performed work for which he was improperly compensated … [the employee must] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."), *citing*

25  <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). See also, <u>Vinole v. Countrywide Home Loans, Inc.</u>, *supra* at 371 F.3d 945, citing <u>Jewel Tea Co. v. Williams</u>, 118

26  F.2d 202, 207-08 (10th Cir. 1946)/

    [47] Another individualized inquiry regarding liability is whether plaintiffs and putative class members

27  were prevented from earning "piece rates" by pre- and post-trip work; see, e.g., Section 47.7 of DLSE Enforcement     Policies     and     Interpretations     Manual     (2002)     at

28  http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf.  This would require an individualized factual determination, relevant to the predicate issue of liability.

20

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

mid-2012, the company provided (at its own cost) boots to drivers.  (McCuan Decl. ¶5, 6, 7, 8; Pfeifer Decl. ¶¶5, 6, 7; Schott Decl. ¶¶5, 6, 7.).  Accordingly, there is no commonality or even any issue here – maybe if drivers submitted claims.

### iii. Wage Statements

In order to prevail on a claim regarding inaccurate wage statements, a plaintiff must prove actual *injury* from the inaccurate wage statement; *see* <u>Alonzo v. Maximus, Inc.</u>, 832 F.Supp.2d 1122, 1135(C.D. Cal. 2011) ("California courts have made clear that … an employee may not recover for violations of [section 226(a)] unless he or she demonstrates an *injury* arising from the missing information.")(original italics).  Plaintiffs can demonstrate such injury only by fact-specific inquiry..[48]

Further, given the information on the Daily Trip Sheets, which Plaintiffs retain, there will be individual questions as to whether the Trip Sheets themselves, provide the information required by California law.  Accordingly, there is also no commonality here.

### D.   Plaintiffs Have Failed To Establish That Their Claims Are Typical Of The Putative Class Under Rule 23(a)(3)

"The purpose of the typicality requirement is to assure that the interest of the named representative *aligns with the interest of the class."* <u>Konik</u>, *supra*, 2010 U.S. Dist. LEXIS 136923, *16 (emphasis added).  Typicality is not met where there is a danger that absent class members will suffer if their class representatives are preoccupied with defenses unique to the class representatives.  <u>Hanon</u>, *supra*, 976 F.2d at 508, and <u>Mazur</u>, *supra*, 257 F.R.D. at 568-9.

"The commonality and typicality requirements … tend to merge." <u>Wal-Mart</u>, *supra*, 131 S.Ct. at 2551, n. 5.  Just as Plaintiffs have failed demonstrate commonality, so too they fail to demonstrate typicality.  The same long laundry list

---

[48]  As noted earlier in this brief, the daily trip sheets contained itemized daily wage information about what monies Plaintiffs had earned for particular work performed.  Accordingly, Plaintiffs cannot demonstrate injury; *see* <u>Price v. Starbucks Corp.</u> (2011) 192 Cal.App.4th 1136 (sustaining demurrer because employee failed to establish injury arising from purportedly missing wage information).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

of individualized factual inquiries that defeat commonality also defeat any finding of typicality, because each named plaintiff may be preoccupied by different defenses that are unique to him or her, and which may not apply to other members of the class that the named plaintiff is ostensibly tasked with representing.   Accordingly, Plaintiffs cannot demonstrate the requisite typicality under Rule 23(a)(3).

### E.   Plaintiffs Have Failed To Establish That They Are Adequate Class Representatives Under Rule 23(a)(4)

"**There must be no possibility of any antagonistic interests since the allowance of a class representative with antagonistic interests to other members of the class would deny unnamed members of the class due process.**" Sullivan v. Winn-Dixie Greenville, Inc., 62 F.R.D. 370, 375 (D. S.C. 1974)(emphasis added), *citing* Hansberry v. Lee, 311 U.S. 32, 44-45, 61 S. Ct 115, 85 L. Ed. 22 (1940).[49]

As discussed above, Plaintiffs have failed to demonstrate under Rule 23(a)(4) that they will fairly and adequately protective the interests of the proposed class.[50] First, numerous fundamental conflicts exist between within the class:

- At least 71% of Victorville class members (excluding Plaintiffs) have already settled and released all potential claims.  (Fries Decl. ¶¶3-5; Larsen Decl. ¶¶4-6.)   Any attempt by the named class representatives to unwind these settlements, which they have threatened to try to do, would clearly conflict

---

[49] "It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation, is either to assert a common right or to challenge an asserted obligation … It is quite another to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group, merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. **Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires.**"(Emphasis added.).

[50] Adequacy requires answering two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *27. "Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1      with the wishes of the class members who have already settled.

2   •      Class members who are former employees may seek to recover significant

3          monetary sums for inflated past claims, which would reduce the money

4          available to current class members for either raises to address issues faced

5          by current employees which past employees obviously no longer deal with.[51]

6   •      Only 6 of 16 plaintiffs submitted declarations here, which were again cloned

7          boilerplates.

8   •      Even one of the named plaintiffs – Jody Paulson, who happens to be on the

9          Victorville union's bargaining committee – has stated that she wants out of

10         this case.  (Bronchetti Decl. ¶4, Exhs. A, B; Fries Decl. ¶6.)  Conflicts arise

11         if she was offered additional money to stay in.

12         Second, Plaintiffs have failed to provide the actual, sufficient evidence

13   required to demonstrate that they, and class counsel Mr. Desai, will prosecute the

14   action vigorously on behalf of the class.   Mr. Desai prefers to settle using

15   supported PAGA penalties as his client to structure his settlements so that the

16   payments to him as attorneys' fees are large in comparison to what is attributed to

17   PAGA.[52]

18         That certainly is not evidence – much less the required sufficient evidence –

19   to demonstrate that Mr. Desai would vigorously or adequately protect the interests

20   of the class members, as he is required to do.  Accordingly, Plaintiffs have failed to

21   demonstrate adequacy under Rule 23(a)(4).

22   **F.   Plaintiffs Have Failed To Establish That (1) Common Questions
       Predominate, And That (2) A Class Action Is A Superior Method
23     For Adjudicating This Controversy Under Rule 23(b)(3)**

24         "Under Rule 23(b)(3), **Plaintiff must show both** that "questions of law or

25   fact common to class members predominate over any questions affecting only

26

27   [51]  "[T]he Court is not satisfied that the allocation of the settlement fund does not unfairly benefit
     certain class members."  Tijero, supra, 2012 U.S. Dist. LEXIS 183238, *32.

28   [52]  75% of which go to the state of California (and not to class plaintiffs) anyways.  (Gitt Decl. ¶¶37-
     38.)

individual class members" **and also that** "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Brown, *supra*, 2011 U.S. Dist. LEXIS 99495, *34. It is "the court's duty to take a "close look" at whether common questions predominate over individual ones." Comcast, *supra*, 2013 U.S. LEXIS 2544, *13. "Rule 23(b)(3)'s predominance criterion *is even more demanding* than Rule 23(a)." Id.; *see also* Konik, *supra*, 2010 U.S. Dist. LEXIS 136923, *12 (same).

As this Court has recognized, a "class action is improper where an individual class member would be compelled to try numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." Gable v. Land Rover North America, Inc., 2011 U.S. Dist. LEXIS 90774, *12-13 (C.D. Cal. 2011). *See also* Zinser, *supra*, 253 F.3d at 1192, as amended, 273 F.3d 1266 (9th Cir. 2001), and Konik, *supra*, 2010 U.S. Dist. LEXIS 136923, *12 (same).

Where – as here – Plaintiffs are unable to meet the Rule 23(a)(2) commonality requirement, by definition they cannot meet the more rigorous Rule 23(b)(3)'s "predominance" requirement; *see* Rose v. SLM Fin. Corp., 254 F.R.D. 269, 274 (W.D.N.C. 2008)("[S]ince … Rule 23(a)(2) is not met, plaintiffs cannot show that … Rule 23(b)(3) is met."). The declarations filed by Plaintiffs in support of their class certification motion, purportedly showing the existence of numerous common issues, do nothing to change this conclusion.[53] See Babineau v. Federal

---

[53] The generalized nature of the declarations, combined with the fact that several of the declarants (and other plaintiffs) were either laid off (Erik Senf) or involuntarily terminated (Ricky Crawford, Neva Crawford, Bill McMahon, Dante Steward, Tony Skirrow, and Dan Ware) render their declarations uncredible. Dunbar, *supra*, 141 Cal.App.4th at 1431 (**"The Court is evaluating … whether common issues predominate … Plaintiff's declarations are general in nature and may be tainted by hostility to Defendant."**)(emphasis added). At best, Plaintiffs and Defendants have submitted conflicting evidence, which is insufficient to support a finding that class certification is warranted; *see* Rosales v. El Rancho Farms, 2012 U.S. Dist. LEXIS 11069, *9-12 (E.D. Cal. 2012) (Conflicting evidence submitted by plaintiffs and defendants "poses a significant concern for managing a class action."; because of conflict in evidence, plaintiffs had failed to demonstrate commonality, failed to demonstrate typicality, and therefore were not proper class representatives).

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  Express Corp., 576 F.3d 1183 (11th cir. 2009 (individual questions predominate

2  regarding reasons for early and late check-ins and individualized reasons for gaps

3  between clock-in time and start time work), Cole v. CRST, Inc., 2012 U.S. Dist.

4  LEXIS 144944 (C.D. Cal, Sept. 27, 2012) (denying certification on mileage-based

5  compensation issue).

6  Plaintiffs have also failed to demonstrate that a class action would be a

7  superior method of litigating this dispute. Plaintiffs must prove that the class

8  action is "superior – "not just as good as" – other available methods of handling

9  the controversy." Saunders, supra, 2007 U.S. Dist. LEXIS 97193, *3; Abby,

10  supra, 218 F.R.D. at 549. See Vinole v. Countrywide Home Loans, Inc., supra

11  571 F.3d at 947 (rejecting Plaintiff's proposed sampling, questionnaires, etc.)

12  **IV.  CONCLUSION**

13  RLC respectfully submits that this class certification motion is premature,

14  and therefore, in the interests of judicial economy, requests that a ruling on this

15  motion be stayed, for the reasons set forth herein. In the alternative, RLC

16  respectfully requests that this Court deny Plaintiffs' motion for class certification,

17  for the reasons set forth herein.

18  DATED:  April 1, 2013                    BROWN GITT LAW GROUP, ALC

19

20                                    By:  _Cynthia E. Gitt_____

21                                         CYNTHIA E. GITT
                                           LAWRENCE L. YANG
22                                         ANI M. AKOPYAN
                                           Attorneys for Defendant
23                                         RUAN LOGISTICS
                                           CORPORATION

24

25

26

27

28

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**