DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Ste. 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830
Facsimile: (949) 271-4190
aashish@desai-law.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BURNHAM, FERNANDO CASTILLO, NEVA CRAWFORD, RICKY CRAWFORD, TED DAY, JOHN GUGLER, CHARLES HOWLETT, EDUARDO JIMENEZ, BILL MCMAHON, JODY PAULSON, ROBERT ROJAS, TODD SHOOK, TONY SKIRROW, DANTE STEWARD, SALVADOR BUCIO SUAREZ AND DANIEL WARE, and all other "aggrieved" employees,<br><br>   Plaintiffs,<br><br>  vs.<br><br>RUAN TRANSPORTATION, an Iowa corporation, and DOES 1-100, inclusive,<br><br>   Defendants. | CASE NO.: SACV 12-0688 AG (ANx)<br><br>Judge: Andrew J. Guilford<br><br>**NOTICE AND MOTION FOR PRELIMINARY APPROVAL**<br><br>**HEARING SCHEDULE**<br><br>DATE: October 26, 2015<br>TIME: 10:00 a.m.<br>CTRM.: 10D<br>JUDGE: Andrew J. Guilford |

1

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 26, 2015 or as soon as the matter may be heard in Courtroom 10D of the above-entitled court, Class Representatives Michael Burnham, Fernando Castillo, Ricky Crawford, Neva Crawford, Ted Day, John Ben Gugler, Charles Howlett, Eduardo Jimenez, Bill McMahon, Jody Paulson, Roberto Rojas, Todd Shook, Tony Skirrow, Dante Steward, Salvador Bucio Suarez, and Dan Ware (collectively "Plaintiffs" or "Class Representatives") hereby move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1. Preliminarily approving the settlement agreement (the "Settlement"), reached with Ruan Logistics Corporation ("Defendant" or "RLC") attached as Exhibit 1 to the Declaration of Aashish Y. Desai in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Desai Decl.").

2. Directing distribution of notice of the Settlement to the class;

3. Appointing Simpluris as the Notice Administrator; and

4. Scheduling a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arm's length, good-faith negotiations; resolves all of the issues in the case, is fair, reasonable, and adequate to the Class and Class Counsel; and should be preliminarily approved, as discussed in the Memorandum in Support of the Motion (below).

This motion is based on this Notice of Motion and Motion, the supporting Memorandum in Support of the Motion, the accompanying Declaration of Aashish Y. Desai and exhibits attached thereto, the Declaration of Michael Burnham, Declaration of Fernando Castillo, Declaration of Ricky Crawford, Declaration of Neva Crawford, Declaration of Ted Day, Declaration of John Ben Gugler, Declaration of Charles Howlett, Declaration of Eduardo Jimenez, Declaration of Bill McMahon, Jody Paulson, Declaration of Roberto Rojas, Declaration of Todd Shook, Declaration of Dante Steward, Declaration of Salvador Bucio Suarez, the Declaration of Dan Ware, the argument of

counsel, and all papers and records on file in this matter.  This motion is also based upon any oral testimony or evidence presented at the requested hearing.

Respectfully submitted,

Dated:   September 26, 2015                DESAI LAW FIRM, P.C.

By: _____/s/ Aashish Y. Desai_____
        Aashish Y. Desai
        Adrianne De Castro
        Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................1

II.  PROCEDURAL HISTORY ...................................................................2

   A.  The Parties Battled With Dispositive Motions ...............................3

   B.  Discovery and Class Certification Was Disputed............................4

   C.  The Parties Prepared for Trial .........................................................5

III.  SETTLEMENT NEGOTIATIONS .......................................................5

IV.  TERMS OF THE SETTLEMENT .........................................................7

   A.  Settlement Sums and Additional Consideration ...........................7

   B.  Monetary Relief to Class Members ................................................7

   C.  Release of All Claims Against the Settling Defendants .................8

   D.  Attorneys' Fees and Costs ...............................................................9

   E.  Class Representative Service Payments...........................................9

V.  LEGAL ARGUMENT ..........................................................................13

   A.  Class Action Settlement Procedure ...............................................13

   B.  Standards for Preliminary Settlement Approval............................13

   C.  Settlement is the Product of Informed, Non-Collusive Negotiation..........14

   D.  The Proposed Settlement Is Within the Range of Reasonableness ...........15

   E.  Class Counsel Are Entitled to Reasonable Fees .........................17

      1.  Class Counsel Obtained Excellent Results for the Class In Light of the Burden of Litigation ........................................19

      2.  Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case....................19

      3.  Awards in Similar Cases Demonstrate That Class Counsel Seek A Reasonable Fee Award ........................................20

      4.  Other Factors Support Approval of Class Counsels' Fee Request.......21

        i.  Counsel's Skill and Experience........................................21

      ii.  A Partial Lodestar Cross-Check Alone Supports the
          Fee Request ......................................................................21

    F.  Class Counsel Are Entitled to Reimbursement of Expenses
      Under the Settlement Agreement ...............................................22

VI.    PROPOSED PLAN OF NOTICE ...................................................22

VII.   PROPOSED PLAN OF ALLOCATION.........................................24

VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING
     SCHEDULE ................................................................................25

IX.    CONCLUSION ............................................................................25

# TABLE OF AUTHORITIES

## CASES

### Federal

*Amchem Prods. v. Windsor*,
  521 U.S. 591, 617 (1997)..............................................................................22

*Bautista v. Harvest Management Sub*
  No. 2:12-cv-10004 (C.D. Cal. Oct. 16, 2013)..............................................16

*Beck, et al. v. Boeing Co.*,
  Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004)..............12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 478 (1980)..............................................................................17

*Byrd v. Civil Serv. Comm'n*,
  459 U.S. 1217 (1983)....................................................................................14

*Ching v. Siemens Industry, Inc.*
  No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) .................................24

*Churchill Village, LLC v. General Elec.*,
  361 F.3d 566, 576 (9th Cir. 2004)................................................................13

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448, 470-71 (2d Cir. 1974) ............................................................19

*City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*,
  100 F.3d 1041, 1043 (1st Cir. 1996) ............................................................15

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) .............................................21

*Create-A-Card, Inc. v. Intuit, Inc.*,
  No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept.
  22, 2009) .......................................................................................................15

*Dan's City Used Cars, Inc. DBA Dan's City Auto Body v. Pelkey*,
  133 S.Ct. 1769 (May 13, 2013)......................................................................4

*Fischel v. Equitable Life Assur. Soc'y*,
  307 F.3d 997, 1006 (9th Cir. 2002)...............................................................18

*Guippone v. BH S&B Holdings, LLC*,
  No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28,
  2011) .............................................................................................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1027 (9th Cir. 1998)..............................................................14

*Hernandez v. Kovacevich "5" Farms*,
  No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605, at *25-31
  (E.D. Cal. September 30, 2005) ....................................................................20

*In re Activision Sec. Litig.,*
   723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ........................................................20

*In re Citric Acid Antitrust Litig.,*
   145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ...................................................24

*In re Heritage Bond Litig.,*
   MDL 02-1475, 2005 U.S. Dist. LEXIS 13555, at *64-74
   (C.D. Cal. June 10, 2005)...................................................................................21

*In re NASDAQ Market Makers Antitrust Litig.,*
   176 F.R.D. at 102 ...............................................................................................16

*In re Oracle Sec. Litig.,*
   No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3
   (N.D. Cal. June 16, 1994) ..................................................................................24

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373, 379 (9th Cir. 1995).......................................................................20

*In re Rite Aid Corp. Sec. Litig.,*
   396 F.3d 294, 306-07 (3d Cir. 2005) .................................................................21

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291, 1300 (9th Cir. 1994)................................................................17, 18

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685, 694 (N.D. Ga. 2001) ...............................................................12

*Knight v. Red Door Salons, Inc.*
   No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) .............................................18

*Linney v. Cellular Alaska P'ship,*
   No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. Jul. 18, 1997)........20

*Meijer v. Abbott Laboratories,*
   No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%) .........................................20

*Mendoza v. United States,*
   623 F.2d 1338, 1351 (9th Cir. 1980)..................................................................24

*Mitland Raleigh-Durham v. Myer,*
   840 F. Supp. 235, 239 (S.D.N.Y.).......................................................................22

*Novartis Pharms.,*
   No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 ................12

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615, 625 (9th Cir. 1982).......................................................................14

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268, 272 (9th Cir. 1989).............................................................9, 18, 20

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.,*
   392 U.S. 134, 139 (1968)....................................................................................18

*Pillsbury Co. v. Conboy*,
  459 U.S. 248, 262-63 (1983)..................................................................18

*Radcliffe v. Experian Information Solutions, Inc.*,
  715 F.3d 1157, 1165 (9th Cir. 2013).....................................................12

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185, 201 (S.D.N.Y. 1997)...............................................11

*Scott v. Bimbo Bakeries USA*
  No. 2:10cv03154 (E.D. Pa. March 5, 2014) (ECF No. 174)................16

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  No. 09-6548, 2012 U.S. Dist. LEXIS 53556, at *41 (S.D.N.Y. April 20, 2012) .11

*Staton v. Boeing Co.*,
  327 F.3d 938, 977 (9th Cir. 2003).........................................................10

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273, 333 n.65 (3d Cir. 2011)..........................................10, 12

*Tijero v. Aaron Brothers, Inc.*
  No. C 10-01089-SBA, 2013 WL 6700102 at *3
  (N.D. Cal. Dec. 19, 2013) .....................................................................16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943, 950 (9th Cir. 1976).........................................................13

*Vedachalam v. Tata Consultancy Servs. Ltd.*,
  No. 06-0963, 2013 U.S. Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18, 2013) ..........................................................................................................20

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *73
  (S.D.N.Y. Nov. 30, 2010) ......................................................................12

*Villegas v. J.P. Morgan Chase & Co.*,
  CV 09-00261 SBA EMC, 2012 WL 5878390, at *6
  (N.D. Cal. Nov. 21, 2012) .....................................................................14

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759, 769 (9th Cir. 1977).........................................................22

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043, 1048-50 (9th Cir. 2002) ........................................ passim

*Wininger v. SI Mgmt. L.P.*,
  301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002) ....................................18

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 23(c)(2)(B)........................................................................22

Fed. R. Civ. P. 23(e) ..................................................................................2, 12, 25

Fed. R. Civ. P. 23 ................................................................................................12


STATE STATUTES AND RULES

Cal. Lab. Code § 2698 ........................................................................................17


TREATISES

4 Newberg on Class Actions §§ 11.22, et seq. (5th ed. 2011)...........................12, 22

Nantiya Ruan, Bringing Sense to Incentives:
  An Examination of Incentive Payments to Named
  Plaintiffs in Employment Discrimination Class Actions,
  10 Employment Rights and Employment Policy Journal 395,
  396-397 (2006)...................................................................................................10

Newberg § 11.25. *The Manual for Complex Litigation* (Fourth) (2004) ...........13, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF MOTION**

## I.  INTRODUCTION

Plaintiffs and Class Representatives Michael Burnham, Fernando Castillo, Ricky Crawford, Neva Crawford, Ted Day, John Ben Gugler, Charles Howlett, Eduardo Jimenez, Bill McMahon, Jody Paulson, Roberto Rojas, Todd Shook, Tony Skirrow, Dante Steward, Salvador Bucio Suarez, and Dan Ware respectfully request that the Court grant preliminary approval of the Settlement reached with Ruan Logistics Corporation ("RLC" or "Defendant"), attached as Exhibit A to the Declaration of Aashish Y. Desai in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Desai Decl.").

After over three years of heated litigation and voluminous law and motion volleys, this Settlement will fully and finally resolve all of the claims of the Class of employees that the Court certified on February 13, 2014 (Dkt. No. 222) and February 5, 2015 (Dkt. 314) (the "Class").  The Settlement acknowledges that RLC continues to deny any liability to Plaintiffs or the Class Members, and any damages or penalties due to Plaintiffs or the Class Members.

The Parties request that for ease of administration, the Court consolidate the classes into a Settlement Class as defined below.

The major terms of the Settlement are as follows:

(1)  The Settlement creates an all-cash fund of $3,500,000 (the "Settlement Fund");

(2)  There is no reversion, despite the financial issues of RLC as previously disclosed in camera to the Court.  However, in light of the financial issues, RLC has negotiated the right to designate the cy pres recipient of uncashed checks.  RLC requests that the Court approve the World Food Prize Foundation as the *cy pres* fund, into which will be deposited funds that were not cashed by class members;

(3)  The Class members will not have to make a claim to receive settlement

payments.  Distributions will be made *directly* to each class member who does not timely opt out;

(4)   Plaintiffs will seek enhancement awards of up to $5,000 for each of the sixteen Named Plaintiffs (totaling $80,000);

(5)   Plaintiffs will move the Court for an award attorneys' fees of 33% of the Settlement Fund, approximately $1.16 million, which, given the amount of time spent on this case, is *less* than counsel's *unadorned* lodestar of $1.5 million, plus $25,000 in costs, both of which will be itemized and submitted to the Court in support of the asserted lodestar and costs;

(6)   As required by Federal Rule of Civil Procedure ("FRCP") 23(h) and local rules, Plaintiffs will file their motion for attorneys fees and enhancement awards no later than 21-days prior to the Final Approval hearing.  Plaintiffs will make their motion available for review by Class Members immediately upon filing, by posting the motion on the settlement website of the Settlement Administrator; and

(7)   The Labor Workforce Development Agency ("LWDA") shall be paid $200,000 for the state's share of the PAGA penalties.

The parties now seek preliminary approval of this comprehensive Settlement.  The proposed notice provides Class members with the best notice practicable under the circumstances and will allow each Class member a full and fair opportunity to evaluate the Settlement and decide whether to opt-out or object to the Settlement.  Defendant does not oppose this motion.

By this motion, Plaintiffs request that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice; (3) appoint Simpluris as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to object to, or opt out of, the Settlement; (5) schedule a hearing pursuant to FRCP 23(e) to determine whether the proposed Settlement is fair, reasonable, adequate, and should be finally approved.

## II.   **PROCEDURAL HISTORY**

Plaintiffs are current and former truck drivers who work or worked for RLC in the State of California.  Plaintiffs alleged that they did not receive meal and rest breaks, did not receive compensation for rest breaks, did not receive pay for certain non-driving work including pre- and post-shift work, and did not receive paystubs that complied with California law.  Plaintiffs filed a Complaint against Defendant in May 2012 pursuing these claims under California's Private Attorneys General Act ("PAGA") for all "aggrieved employees," throughout the State of California and under California's Unfair Competition Law ("UCL").  (Complaint ¶¶ 38-56.)

### A.   **The Parties Battled With Dispositive Motions**

The litigation was non-stop.  Almost immediately, Defendant fought hard to dismiss this lawsuit.  The parties filed cross-motions for summary judgment.  Plaintiffs moved for summary adjudication regarding the legality of Defendant's compensation plan.  (Dkt. No. 17.)  Defendant moved for summary adjudication arguing preemption under the Federal Aviation Administration Authorization Act ("FAAAA").  (Dkt. Nos. 20-29.)  Plaintiffs had to respond to the substance of Defendant's Motion as well as voluminous objections and Supplemental Motions filed over several months.  (Dkt. Nos. 28-29, 75-76, 91-121,130, 141-146.)  The Plaintiffs also filed a Motion for Summary Judgment as to their paystubs and reimbursement claims.  (Dkt. Nos. 147, 148.)  In the aftermath, Defendant sought to dismiss the entire case by filing a Motion for Judgment on the Pleadings seeking to strike Plaintiffs PAGA claims and preempt their UCL claims. (Dkt. No. 188.)[1]

This case presented distinct challenges because the case law regarding FAAAA preemption and piece-rate compensation was, and is, evolving.  Plaintiffs were compelled to closely follow the state of the law and apprise the Court of recent rulings as they were happening.  (*See* Dkt. No. 90; Dkt. No. 125; Dkt. No, 168, Dkt. No. 317.)  Recognizing the changing nature of the law, the Court also ordered the parties to file briefs addressing

---

[1] Plaintiffs' opposed the Motion and it was summarily denied.  (Dkt. No. 199.)

the potential impact of *Dan's City Used Cars, Inc. DBA Dan's City Auto Body v. Pelkey*, 133 S.Ct. 1769 (May 13, 2013), a recent Supreme Court decision interpreting the FAAAA. (Dkt. No. 136.)

After voluminous briefing, the Court eventually granted Defendant's Motion for Summary Judgment ruling that Plaintiffs' compensation and meal and rest break claims were preempted by the FAAAA.  (Dkt. No. 172.)[2]  Shortly thereafter, the Court also partially granted Plaintiffs' Motion for Summary Judgment as to their PAGA paystub claim. (Dkt. No. 179).  Further briefing and hearings were required in 2014 following the Ninth Circuit's decision in *Dilts v. Penske Logistics LLC*, 769 769 F.3d 637 (9th Cir. 2014), which resulted in the Court reversing its partial grant of summary judgment to Defendant.  Numerous legal and factual issues remain unresolved in this Action, which would require many more months of litigation and uncertainty if the case did not resolve through settlement.

**B.      Discovery and Class Certification Was Disputed**

Discovery has been thorough, and has required the parties to engage in numerous and extensive in-person and telephonic meetings concerning the scope of discovery and the analysis of the various documents including policy documents, paystubs, pay records, pay plans for several different terminals, and time sheets.  Defendant deposed several of the named Plaintiffs, and produced tens of thousands of records and drivers logs relating to the issues in this case.  Plaintiffs deposed the designated witness on behalf of RLC as to the Adelanto terminal. (Desai Decl. ¶ 7.)  Because each side was fighting vigorously for their respective position, the parties also sometimes engaged in heated discovery battles regarding the scope of discovery -- spilling over into multiple rounds of discovery motions and appeals.  (Dkt. Nos. 65-67, 184-186, 207-210, 212-214.)

---

[2] The Court immediately certified this decision for interlocutory appeal (Dkt. No. 176.) Plaintiffs attempted to appeal that decision but despite this Court's reasonable request, the Ninth Circuit denied the petition.  (Dkt. No. 201.)  The Court denied Defendant's motion for interlocutory appeal, leaving the issue open for appellate review following the final judgment in the case.

The parties expended significant time and resources briefing multiple rounds of class certification.  In fact, as result of the Court's Orders on the summary judgment, the parties had three rounds of class certification.  (Dkt. Nos. 91, 202-206-222.)  In February 2014, the Court granted in part and denied in part Plaintiffs Second Amended Motion for Class Certification (Dkt. No. 222) and Plaintiffs' Motions to Compel information regarding the class. (Dkt. No. 223.)

### C.    The Parties Prepared for Trial

In light of the Court's Order granting their Motion for Summary Judgment as to their PAGA claims, Plaintiffs, who were then Class Representatives, swiftly moved to assess PAGA penalties against RLC, following an earlier motion by RLC to disallow such penalties on Constitutional and statutory grounds.  The parties also prepared and filed all the pre-trial documents including memoranda of law and fact and exhibit and witness lists relating to the alleged wage statement and record keeping violations and waiting time penalties for those claims.  (Dkt. Nos. 225, 249-254.)

Soon after these filings, the parties reached a class-wide settlement on just the paystub claims for $700,000 during mediation with Mark Rudy on April 7, 2014.  With the paystub claims apparently settled, and following additional appellate decisions, Plaintiffs continued to aggressively litigate their meal and rest break and compensation claims.  After the Court reversed its previous ruling and denied Defendant's Motion for Summary Judgment (Dkt. No. 282), Plaintiffs' meal and rest break claims, and compensation claims were re-established.  Plaintiffs then renewed their motion for class certification on those claims.  On February 6, 2015, the Court granted Plaintiffs' Motion for Class Certification and certified the three classes based on the compensation claims, the meal and rest break claims, and waiting time penalty claims.  (Dkt. No. 314.)

## III.   SETTLEMENT NEGOTIATIONS

Plaintiffs and RLC engaged in extensive mediated negotiations to resolve the dispute.  As explained above, they had an initial mediation with Mark Rudy on April 5, 2014.  The mediation resulted in a piece-meal settlement of Plaintiffs' paystub and record

violation claims for $700,000.  (Desai Decl. ¶ 9.)

Following the Court's 2015 class certification, the parties decided to attempt mediation once again to try to reach a global settlement.  On June 10, 2015, the parties engaged in a full-day mediation with Hon. Edward A. Infante (Ret.) in San Francisco. (Desai Decl. ¶ 23.)  The parties exchanged detailed information regarding the driving routes, pay practices, the collective bargaining agreement at Adelanto, wage statements, pay records, and pay periods worked at the four active (one active terminal has only two drivers) and the four closed terminals encompassed by the class certification.  The information -- according to Defendant -- disclosed, for example, that each terminal had a different pay plan, some of which paid hourly for some of the activities Plaintiffs claimed were unpaid in the activity-based compensation at Adelanto; terminals that did both interstate and intrastate driving had different plans for each kind of driving; at two of the terminals drivers were only in the State of California for an hour or two each day, while drivers at two other terminals drove out of state 40-80% of the time.  Plaintiffs also were provided with detailed information regarding the number of pay periods that each driver at each terminal was paid during the class period.  Plaintiffs also were provided with financial information regarding recently closed terminal and the remaining active terminals.  This information was and is directly related to penalties, which has been one of the primary monetary risks in this case.

After several hours of negotiations facilitated by Judge Infante, the parties executed a Memorandum of Understanding to settle the entire case for $2.8 million more than had previously been pledged in the first mediation, for a total settlement of $3.5 million. Plaintiffs and RLC exchanged several drafts of the final Settlement Agreement and related settlement documents before the parties came to final agreement as to each. (*Id.* ¶ 23.)

At all times during the negotiation process, counsel for Plaintiffs and the Defendant bargained vigorously and at arm's length on behalf of their clients. (*Id.* ¶ 15.)  All Class Representatives support this Settlement.

1

## IV.   TERMS OF THE SETTLEMENT

2

The Settlement resolves all claims of Plaintiffs and the Class against the RLC.  The

3

details are contained in the attached Settlement Agreement. (Desai Decl., Ex. A

4

["Settlement Agreement"].)  The key terms of the Settlement are described below.  The

5

Parties did stipulate and agree to revise the description of the class period that was set

6

forth in the Memorandum of Understanding signed at the mediation.

7

### A.   Settlement Sums and Additional Consideration

8

Settling Defendants will pay $3,500,000 to resolve all claims of Plaintiffs and the

9

Class.  This amount is inclusive of attorneys' fees and costs (if approved), the cost of

10

administration, enhancement payments to the Class Representatives (if approved), taxes

11

attendant to distributions, and a payment to the LWDA for $200,000 for the State's share

12

of the PAGA penalties.  This is a "no reversion" settlement.  The Class will not have to

13

make a claim in order to receive distributions; and distributions will be made *directly* to

14

each class member who does not opt out of the class following notice to the class.  In

15

other words, the Class will not have to jump through hoops or fill out unnecessary forms

16

to benefit from this settlement.  The money will flow *directly* to each truck driver.  This is

17

the "gold standard" for class action settlements in employment wage and hour cases.  Any

18

remainder from the Maximum Settlement Amount will go to a *cy pres* fund designated by

19

RLC, and approved by the Court, which RLC proposes to be the World Food Prize

20

Foundation ("WLPF"), a well-regarded 501(c)(3) organization.  The Parties agree that this

21

designation is appropriate given RLC's transportation of food and food products through

22

the class members and the mission of WLPF to recognize contributions to improvements

23

in food quantity, quality and distribution to needy people throughout the world.  RLC will

24

provide the Court with information supporting this designation prior to the preliminary

25

hearing.

26

### B.   Monetary Relief to Class Members

27

After deducting the Class Representative Fees, Class Counsel's awarded attorneys'

28

fees and costs, the payment to the LWDA, and the Claims Administrator's fees and

expenses, the balance of the Maximum Settlement Amount (the "Net Settlement Proceeds") will be distributed as follows:  (Settlement Agreement, ¶¶ 11-18.)

Defendant will calculate the total number pay periods that all Class Members were employed during the applicable Class Period(s).  The value of each pay period shall be determined by the Claims Administrator by dividing the Net Settlement Proceeds by the total number of pay periods in which the Class Members were paid during the Class Period.  With the exception of class members who reached settlements with RLC in 2013, each class member will be eligible to receive a share of the settlement based on the individual's total worked pay periods.  Any Class Member who previously executed a Release and obtained a settlement from the Defendant will be allowed to claim pay periods after March 1, 2015.  This limitation is to acknowledge the quite powerful defense of satisfaction and release to this group of employees.  (Desai Declaration, ¶ 25.)

This formulation based on pay periods is appropriate because (1) it is consistent with how class members were paid, how wage statements were issued, and how pay records were and are maintained; and (2) it is consistent with the way Plaintiffs calculated the PAGA and other penalties.  Any recoverable waiting time penalties are based on daily wages, which can be calculated by looking at pay periods rather than workweeks.

**C.**     **Release of All Claims Against the Settling Defendants**

In exchange for the RLC's monetary consideration, upon entry of a final judgment approving the proposed Settlement, Class Representatives and the Class will release RLC from all certified claims reasonably arising from the facts in the Complaint (Dkt. No. 1) including but not limited to wage and hour claims, claims for unpaid wages for any work allegedly not encompassed by activity-based pay or delay pay or hourly based pay, alleged off-the-clock work, meal periods, rest periods, wage statement violations, record violations, reimbursement claims (for named Plaintiffs), and claims under the UCL and the PAGA, as well as claims for penalties or premium pay.  (Settlement Agreement, ¶¶ 19-20.)   All class members will be deemed, by failing to opt out, to have waived California Civil Code California Civil Code §1542 with respect to the released claims, and

1   this waiver will be clear in the Notice to the Class.

2       **D.**     **Attorneys' Fees and Costs**

3         Class Counsel will move, and Defendant will not oppose, Class Representatives'

4   request for attorneys' fees up to 33% of the Settlement Fund (approximately $1.16

5   million), plus costs and expenses not to exceed $25,000.  Because the settlement Class

6   Counsel obtained successfully resolved California state law claims, the request must be

7   based upon California state law.  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 P.3d 1470,

8   1479 (9th Cir. 1995) (affirming that state law applies in determining not only the right to

9   fees, but also in the method of calculating the fees).  Fees are justified under either

10   approach here.  First, this amount is just above the Ninth Circuit *federal* benchmark of

11   twenty-five percent.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th

12   Cir. 1989).  That "bench mark" is subject to adjustment—up or down—based on a number

13   of factors all of which would apply here. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043,

14   1048-50 (9th Cir. 2002).  The state courts of California do not have an appellate decision

15   on the issue, but trial courts routinely award 1/3 percent in attorney's fees in wage and

16   hour class actions.  Class Counsel requests such an adjustment based on their tenacious

17   litigation of this case (lodestar calculation), fronting all costs and working on a

18   contingency basis against a formidable Defendant.[3]

19       **E.**     **Class Representative Service Payments**

20         By this Motion, Class Counsel is also seeking reasonable service award payments

21   of $5,000 for each of the Named Plaintiffs for their services as Class Representatives, to

22   be paid from the Settlement Fund at the time when the Fund is distributed and claims are

23   paid.  These proposed service awards will be in addition to any monetary recovery to the

24   Class Representatives pursuant to the plan of allocation.

25         "The purpose of these payments is to compensate named plaintiffs for the services

26   they provided and the risks they incurred during the course of class action litigation, and

27   to reward the public service of contributing to the enforcement of mandatory laws."

28   [3]  Under *Mangold*, federal courts applying California law also have wider latitude than under federal law in the factors they may use in adjusting a lodestar.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (*en banc*) (affirming class action settlement with common fund, providing for service awards of $85,000 to each of two class representatives) (quotation omitted), *cert. denied*, 132 S. Ct. 1876 (2012). *See also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments"). The requested service awards are reasonable and appropriate here.

Here, the Class Representatives have made important contributions to the prosecution and fair resolution of this action on behalf of Class members. They have assisted Class Counsel with the initial investigation; preparing and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering documents and other potential evidence about Defendants and their claims; assisting with various aspects of written and other discovery; discussing the strategy and progress of mediations in the case; and participating in regular conversations about the case. Some of the Class Representatives, including former employees, appeared for deposition by Defendant. (*See* Compendium of Class Representative Declarations.) The record amply demonstrates that the $5,000 in requested service awards for each of the Class Representatives is reasonable in light of their vigorous pursuit of the class claims since the inception of this litigation.

The Class Representatives—all of whom worked in the trucking industry—incurred the substantial risks and costs of taking on leadership roles in this visible litigation. These individuals risked being black-balled in this industry. When a class representative is a "present or past employee" of a defendant, the class representative's "present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco, Inc.*, 979 F. Supp.

185, 201 (S.D.N.Y. 1997).[4]

Even where, as here, there is not a record of actual retaliation or blackballing (and indeed, at least one of the Class Representatives remains an employee of RLC), Class Representatives still deserve recognition for assuming the risk of retaliation for the sake of absent class members. *See, e.g., Sewell v. Bovis Lend Lease LMB, Inc*., No. 09-6548, 2012 U.S. Dist. LEXIS 53556, at *41 (S.D.N.Y. April 20, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

Though most of the Class Representatives no longer worked for Defendant at the time they joined the lawsuit, they risked retaliation from their current employers and put their ability to secure future employment at risk as well. (*See* Compendium of Class Representative Declarations.) *See also Sewell*, 2012 U.S. Dist. LEXIS 53556, at *42 ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *20 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 U.S. Dist. LEXIS 12762, at *4 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

Accordingly, courts have approved service payments to current and former employee-class representatives that have exceeded the amount the Class Representatives request here. *Texaco*, 979 F. Supp. at 188 (authorizing incentive awards ranging up to

---

[4] *See also* Nantiya Ruan, Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions, 10 Employment Rights and Employment Policy Journal 395, 396-397 (2006) (in addition to assuming responsibilities related to the investigation and discovery of their case, "[e]mployees, former and current, take huge risks when they agree to be named plaintiffs in a class action bringing legal claims of unlawful bad acts by employers.  Retaliation, isolation, ostracism by co-workers, 'black listing' by future employers, emotional trauma, and fear of having to pay defendants' legal fees are among the most obvious.").

$85,000 in nationwide employment discrimination class action from a common fund of $115 million); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *73 (S.D.N.Y. Nov. 30, 2010) (granting service payments of $125,000 to each of 26 named plaintiffs); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004) (awarding $100,000 service payments to each of the named plaintiffs).   These concerns are particularly strong in this federal class action, where the Class Representatives' are easily verified by a web search and PACER.

Third, the Class Representatives should be rewarded for their "public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65.  Here, Plaintiffs were able to obtain significant PAGA penalties and compensation for Defendant's current and former employees.  Here, without the Class Representatives willingness to take the risks of filing class action lawsuits, no recovery would have been possible.  As a result of the Class Representatives coming forward here, the Defendants will pay a total of $3,500,000 into a common fund for the benefit of the Class.

The circumstances in which these Class Representatives advanced this litigation comply with the principles in *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).  At no time was any Class Representative advised by Class Counsel that their entitlement to a service award was conditioned in any way on that Class Representative's support for the Settlement Agreement.  (Desai Decl., ¶ 35.)

The requested service awards are appropriate when compared to the substantial recovery achieved. Courts assessing the reasonableness of requests for service awards may compare the request against the size of the settlement fund.  *See, e.g., Novartis Pharms.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 (affirming $3.775 million in in service award payments in part because it represented only 2.4 percent of the entire monetary award of $152.5 million).  Here, Plaintiffs' requested service awards (totaling $80,000) here collectively represent only about 2.3% of the

proposed settlement fund.

## V.    LEGAL ARGUMENT

### A.    Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements. The Rule 23(e) settlement approval procedure describes three distinct steps where, as here, a class has already been certified:

1. Preliminary approval of the proposed settlement;

2. Dissemination of notice of the settlement to all affected class members; and

3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Newberg on Class Actions §§ 11.22, et seq. (5th ed. 2014) ("Newberg") (describing class action settlement procedure).  By way of this motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed Settlement.

### B.    Standards for Preliminary Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.,* 361 F.3d 566, 576 (9th Cir. 2004). Courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not . . . be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n,* 688

F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom.  Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).

Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quotation omitted).

Application of these factors here supports an order granting the motion for preliminary approval.  To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness."  Newberg § 11.25. *The Manual for Complex Litigation* (Fourth) (2011) ("Manual") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.  *Manual* § 21.632.  As shown below, the proposed Settlement is fair, reasonable and adequate. Therefore, the Court should allow notice to be disseminated to the Class.

**C.    Settlement is the Product of Informed, Non-Collusive Negotiation**

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive.  *See Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

This Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the detailed facts and pitfalls of this case. (Desai Decl. ¶ 32.)  The Parties participated in two rounds of mediation over the last year, and engaged in significant discovery and vigorous litigation.  Both mediators also are very experienced and highly respected in employment

class actions in general and cases involving the trucking industry in particular.  The first mediator was a well-respected Plaintiff's attorney prior to becoming neutral; the second mediator was a well-respected Chief Magistrate Judge for the United States District Court for the Northern District of California.  Specific information was shared on all of the terminals, their respective pay plans, and their employees prior to and during the mediation.  There is no question that this settlement was reached after hard-fought and informed negotiations.

### D.  The Proposed Settlement Is Within the Range of Reasonableness

The parties' proposed Settlement meets the standards for preliminary approval.  First, the Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel, facilitated by experienced and respected mediators, occurring after the parties completed thorough fact discovery.  Newberg § 11.41; *City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Create-A-Card, Inc. v. Intuit, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").  (Desai Decl. ¶ 23.)

Second, the consideration—a total of $3.5 million—is substantial, particularly in light of the very real risk that the class could be decertified or that the Court could award no damages or could award little or no penalties in the circumstances of this case.  Plaintiffs also faced the likely possibility that any favorable result to them would be subject to further appellate review.  Although difficult to calculate at the preliminary state, the substantial recovery should allow each class member to receive an average individual payment of approximately $148 per pay period.  This number was computed utilizing the following assumptions: net settlement of approximately $2,024,334 ($1,166,666 fees;

$19,000 costs; $200,000 LWDA; $80,000 enhancements; $10,000 class administration). Defendant represents that its records show that approximately 417 class members, with a total of 13,748 pay periods, are entitled to the settlement. Thus, the pay period distribution, which may fluctuate, has been computed by dividing the net settlement fund ($2,024,334) by the total class size (417) and pay periods. In any event, the critical point is that the per pay period per person is *significant* and under the circumstances is certainly more than fair in this wage and hour case. *Scott v. Bimbo Bakeries USA*, No. 2:10cv03154 (E.D. Pa. March 5, 2014) (ECF No. 174) (approving a settlement of wage and hour claims for payments of $900 to each current driver and $450 to each former driver, plus $12,500 enhancement payments); *Tijero v. Aaron Brothers, Inc*., No. C 10-01089-SBA, 2013 WL 6700102 at *3 (N.D. Cal. Dec. 19, 2013) (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest Management Sub*, No. 2:12-cv-10004 (C.D. Cal. Oct. 16, 2013) (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class). Moreover, the LWDA will also receive a substantial $200,000 in PAGA penalties. The state -- and (hopefully) taxpayers -- will no doubt be pleased.

Third, the Settlement does not grant preferential treatment to the Class Representatives or to certain portions of the Class; the plan of allocation provides a neutral and fair way to compensate Class members based on the strength of their claims and the length of their employment during the Class Period. *In re NASDAQ Market Makers Antitrust Litig*., 176 F.R.D. at 102. And although those Class Members who executed a release receive only a portion of their claims, this is fair to those who did not sign release agreements and who -- axiomatically -- possess stronger legal claims. Fourth, while settlement provides the Class with a timely, certain, and meaningful cash recovery, a trial—and any subsequent appeals—is highly uncertain, and in any event would substantially delay any recovery achieved, particularly here in the Ninth Circuit where dockets run deep and wide.

In addition, Defendant intended to continue to seek dismissal of this case, and oppose this case proceeding as a class action.  Defendant has consistently contended that Plaintiffs' claims are preempted by federal law and intended to appeal -- to the Supreme Court if necessary -- the Court's ruling otherwise.  In addition, there were several terminals encompassed in the Court's class certification, some with differing pay plans, routes and practices that may have made class litigation of limited value to resolution of the case.  Furthermore, the Court would be faced with many complicated and contentious issues regarding impact and damages across the Class, particularly with regard to the meal and rest break claims but also regarding the different pay plans at the different terminals, half of which have closed for financial reasons.  The pre- and post-shift time claims also were complicated and subject to contrary analysis and opinion when it comes to damages.  Even if Plaintiffs succeeded in proving liability as to the entire class, they still faced the risk that the jury would award only a fraction of the alleged damages—or refuse to award damages or penalties altogether, particularly in light of the small amount of actual damages, Defendant's financial issues, the longstanding industry practices, disputes as to the lawfulness or scope of penalties – especially PAGA penalties – and the evolving state of the law which still continues.  And, even if Plaintiffs were successful at trial, Plaintiffs and the Class faced the risk of protracted appeals, including an appeal of the Court's class certification order.

**E.**   **Class Counsel Are Entitled to Reasonable Fees**

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work on behalf of the Class.  Class Members will be notified of Class Counsel's intent to seek attorneys' fees.  It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)

("WPPSS").

These principles are particularly important in complex litigation, where private enforcement is a necessary component of legal compliance. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such as this one, encourage meritorious class actions, and thereby promote private enforcement of, and compliance with, the California Labor Code. This is particular true of the PAGA which was enacted to allow private enforcement of the California Labor code in light of the LWDA's lack of resources and inability to fully police employer's compliance with the California Labor Code. *See* Cal. Lab. Code § 2698.

In the Ninth Circuit, the district court has discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047; *WPPSS*, 19 F.3d at 1296. Under either of these methods, Plaintiffs request for attorneys' fees is reasonable.

As described above, although California state law applies, the Ninth Circuit has recognized twenty-five percent as the bench mark percentage for the fee award. *See Paul, Johnson*, 886 F.2d at 272. The fees requested here – approximately one-third of the Settlement Fund – are within the range of reasonableness established by Ninth Circuit authority. *See, e.g., Knight v. Red Door Salons, Inc*., No. 08-01520 CD, at \*6 (N.D. Cal. Feb. 2, 2009) (observing that class action fee awards average around one-third of the recovery). In *Vizcaino*, the Ninth Circuit established that a court may adjust a fee award upward or downward from the twenty-five percent bench mark based on the following factors:

(1) the exceptional results for the class;

(2) the risk for its counsel;

(3) whether any individual non-monetary benefits were obtained;

(4) whether the fee is at or below market rates; and

(5) the burden on class counsel of prosecuting the case, including whether the case was litigated on a contingency basis.  290 F.3d at 1048-50 (internal quotations omitted).

Each of the *Vizcaino* factors weigh in favor of granting approval of Plaintiffs' application for a bench mark fee award and would, indeed, support a fee award in excess of that requested here.

### 1. Class Counsel Obtained Excellent Results for the Class In Light of the Burdens of the Litigation

This case has been hotly contested by the Defendant.  Class Counsel has expended extraordinary efforts to marshal the complex evidence required for class certification and the merits.  As explained in detail in the Procedural History, Plaintiffs have been tested at every step of the process.

Based on the litigation efforts and success, Class Counsel has secured a settlement totaling $3.5 million for the benefit of the Class.  The Settlement Fund will be available to Class members without the uncertainties and delays associated with trial and potential appeals.  Based on present information, each Class Member will receive approximately $148 per pay period.  No one has to make a claim.  No one has to submit paystubs or employment records to a third-party administrator.  Nor will the Class Members have to sign "verifications" of the total number of weeks they worked to collect their share of the settlement – all of that will be computed by the administrator *prior* to sending class notice, requiring absolutely no response from the class member (unless, of course, he disputes the weeks worked).  This is a worthy procedural and monetary recovery for the Class, especially when weighed against the burdens of this resource-intensive case.  It is real money.

### 2. Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case.

Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in applying the percentage fund method); *see also City of Detroit*

19

*v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974) ("[D]espite the most rigorous and competent of efforts, success is never guaranteed.").

Large-scale employment cases of this type are, by their very nature, complicated and time-consuming. Here, Class Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. (Desai Decl., ¶¶ 28-29.) In addition, Class Counsel overcame attacks on the pleadings, discovery obstacles, and a rigorous class certification process that required three full rounds of briefing. There has been at all times the very real possibility of an unsuccessful outcome, preemption, decertification and no fee of any kind, despite the significant costs and labor advanced by Class Counsel on behalf of the Class. Plaintiffs amply satisfy this requirement.

### 3. Awards in Similar Cases Demonstrate That Class Counsel Seek A Reasonable Fee Award

As described above, Class Counsel's request for thirty-three percent of the Settlement Funds is above the Ninth Circuit's established benchmark of twenty-five percent. *Paul, Johnson*, 886 F.2d at 272. Nevertheless, this request is in line with the percentages awarded plaintiffs' counsel in other major an employment cases.[5] As these precedents demonstrate, twenty-five percent, at a minimum, would be consistent with recognized "market rates." *See Vizcaino*, 290 F.3d at 1050 (noting that "market rates" are a question of "lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."). Furthermore, since establishing the twenty-five percent benchmark in *Paul, Johnson,* 886 F.2d at 268, courts within the Ninth Circuit have awarded fees above this bench mark in

---

[5] *See, e.g., Vedachalam v. Tata Consultancy Servs. Ltd.*, No. 06-0963, 2013 U.S. Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18, 2013) (awarding 30% of settlement fund in an employment class action); *Meijer v. Abbott Laboratories,* No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).

various types of complex litigation.[6]   The awards granted in these complex cases demonstrate that a 33% fee award is appropriate under these circumstances.

### 4.  Other Factors Support Approval of Class Counsels' Fee Request

In addition to the *Vizcaino* factors, the Court may consider other factors including: counsel's skill and experience and counsel's lodestar.  *See, e.g., In re Heritage Bond Litig.*, MDL 02-1475, 2005 U.S. Dist. LEXIS 13555, at *64-74 (C.D. Cal. June 10, 2005).

#### i.  Counsel's Skill and Experience

Class Counsel's skill and experience weigh in favor of granting the requested fees. As detailed in the Desai Declaration, Class Counsel has substantial experience prosecuting large-scale complex class actions.  He has extensive experience litigating plaintiff-side employment and consumer matters.  Class Counsel brought to this case the skills and experience necessary to successfully litigate and eventually settle an action of this size and complexity.

#### ii.  A Partial Lodestar Cross-Check Alone Supports the Fee Request

"A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point."  *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).  Here, however, a cross-check of the lodestar of Class Counsel (which we provide at *preliminary* approval) demonstrates that the requested fee is reasonable. Class Counsel has invested over $1,504,243 in lodestar, based upon over 2,488 hours of work.  *See* Desai Decl. ¶ 4 Ex. F; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").  The lodestar here, which is supported by actual billing records, demonstrates that Class Counsel's time

---

[6] *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605, at *25-31 (E.D. Cal. September 30, 2005) (33.3% of the $2.52 million settlement in an employment class action); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee) (decided after Paul, Johnson).

and effort committed to this case *far exceed* their fee request of $1,160,000. On this basis alone, there is no doubt that the fees requested are reasonable. *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

### F. Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement

Class Counsel request reimbursement of expenses incurred as of August 21, 2015, in the amount of $18,411.25 to be paid from the Settlement Funds. (Desai Decl., ¶ 4.) "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *Mitland Raleigh-Durham v. Myer*, 840 F. Supp. 235, 239 (S.D.N.Y.) (citation omitted). Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Here, Plaintiffs costs include items that were necessary to litigate this case including court reporter and videographer fees for depositions; court and process server fees; postage and carrier fees; electronic research; mediator's fees; photocopies; and case-related travel. (Desai Decl., ¶ 4, Ex. G.) These are reasonable and standard expenses.

## VI.   PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See* Newberg § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear

through counsel. Fed. R. Civ. P. 23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member." Newberg § 11.53.

Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted). Within 15 days after the Court grants preliminary approval, Defendant will deliver to Simpluris, the Class List for the Class period which shall contain the full legal name, last known physical address, email address (if known), and dates of employment.

Within 15 days thereafter, the Notice Administrator shall cause the Settlement Notice to be mailed by first-class mail, postage prepaid, to Class members pursuant to the procedures described in the Settlement Agreement, and emailed where possible. At least 21 days prior to the Final Approval Hearing, the Notice Administrator will file with the Court an Affidavit of Compliance with Notice Requirements.

Class members will have until forty-five days from the date the Notice period begins (established by the first day upon which the Notice Administrator provides mail Notice to Class Members ("Notice date")) to opt-out (the "Opt-Out Deadline") of the proposed Settlement. Any Class member who wishes to be excluded (opt out) from the Class must send a written request for exclusion to the Notice Administrator on or before the close of the Opt-Out Deadline. The content of the Proposed Class Notice fully complies with due process and Rule 23.

The Proposed Class Notice provides the definition of the Class, describes the nature of the action, including the class allegations, and explains the procedure for making comments and objections. The Class Notice describes the terms of the Settlement with RLC, informs Class members regarding the plan of allocation, and advises Class members that the funds will be distributed at a future time to be determined. The Class Notice specifies the date, time, and place of the final approval hearing and informs Class members how to exclude themselves from the Class and opt out from settlement, or alternatively, how to file objections, and their right to enter an appearance through

counsel.

The Class Notice also informs Class members how to exercise their rights and make informed decisions regarding the proposed Settlement and tells them that if they do not opt out, the judgment will be binding upon them.  The Class Notice further informs the Class that Class Counsel will seek costs of up to $25,000, Class Counsel's attorneys' fees of approximately 33% ($1,166,666) of the Settlement fund, and service awards for the current Class Representatives of up to $5,000 each.  The Class Notice also alerts Class Members to the motion to be filed by Class Counsel for approval of attorneys fees, and where to find that motion, which will be made readily available to Class Members on the website of the Claims Administrator.

Courts have approved class notices even when they only generally describe a settlement. *See, e.g., Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).  This Notice exceeds that standard.

## VII.   PROPOSED PLAN OF ALLOCATION

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  Here, as explained above, Plaintiffs propose that the Settlement Fund be allocated based upon the total pay periods worked during the Class Period.  Such *pro rata* distributions are fair and reasonable in wage and hour cases. *See, e.g., Ching v. Siemens Industry, Inc.*, No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).  The only caveat is that those drivers who executed a release in favor of RLC in 2013 will only be entitled to compensation for

pay periods worked following their execution of releases in favor of RLC.  This limitation is to acknowledge the powerful and very real defense of satisfaction and release to this group of employees.  (Desai Decl., ¶ 25.)

## VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step of the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of approval and members of the Class, or their counsel, may be heard in support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final approval of the Settlement:

| Event | Date |
|---|---|
| Notice of Class Action Settlement to Be Mailed | Within 15 days of receipt of Class member information for drivers who are members of the certified class, except for previously settling drivers who performed no work subsequent to their release of claims. |
| Opt-Out and Objection Deadline 45 days from Notice Date Notice Administrator Affidavit of Compliance with Notice Requirements | Notice of Compliance to be filed 21 days before Final Approval Hearing. |
| Motion for Final Approval and Attorney's Fees and Costs, and Plaintiffs' service awards. | To be 21 days prior to the Final Approval Hearing |
| Final Approval Hearing | TBD |

## IX.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant this motion and set a hearing date for Final Approval.

1

2

3   Dated:   September 26, 2015

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DESAI LAW FIRM, P.C.


By:_____/s/ Aashish Y. Desai_____
        Aashish Y. Desai
        Adrianne De Castro
        Attorneys for Plaintiffs