1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Ste. 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830
Facsimile: (949) 271-4190
aashish@desai-law.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BURNHAM, FERNANDO CASTILLO, NEVA CRAWFORD, RICKY CRAWFORD, TED DAY, JOHN GUGLER, CHARLES HOWLETT, EDUARDO JIMENEZ, BILL MCMAHON, JODY PAULSON, ROBERT ROJAS, TODD SHOOK, TONY SKIRROW, DANTE STEWARD, SALVADOR BUCIO SUAREZ AND DANIEL WARE, and all other "aggrieved" employees,<br><br>Plaintiffs,<br><br>vs.<br><br>RUAN TRANSPORTATION, an Iowa corporation, and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.: SACV12-0688 AG (ANx)<br><br>Judge: Andrew J. Guilford<br><br>**NOTICE AND MOTION FOR FINAL APPROVAL; AND FOR ATTORNEY'S FEES AND COSTS**<br><br>**HEARING SCHEDULE**<br><br>DATE: February 1, 2016<br>TIME: 10:00 a.m.<br>CTRM.: 10D<br>JUDGE: Andrew J. Guilford |

1

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on February 1, 2016 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 10D of the above-entitled court Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(e) for entry of an order finally approving the Settlement with Defendant Ruan Logistics Corporation ("RLC" or "Defendant") specifically:

- Finding that the Settlement is fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

- Finding that the notice provided to the Class constitutes due, adequate, and sufficient notice, and meets the requirements of due process and applicable law;

- Approving the method for allocating the Settlement;

- Directing that this action be dismissed with prejudice as against Defendant;

- Approving the release of claims as specified in the Settlement as binding and effective;

- Reserving exclusive and continuing jurisdiction over the Settlement; and;

- Directing that final judgment of dismissal be entered as between Plaintiffs and Defendant.

Plaintiffs will, and hereby do, also move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for a final order awarding:

1. Attorneys' fees to Class Counsel in the amount of $1,166,666, which is far <u>below</u> their unadorned lodestar of $1,608,310, and represents a $441,644 upfront, voluntary reduction on the part of Class Counsel;

2. $18,411.25 in expenses Class Counsel necessarily incurred in

connection with the prosecution of this action; and

3.     Service awards to be paid pursuant to the Settlement Agreement, which provides for a modest service award of $5,000 for each Class Representative.

This Motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Aashish Y. Desai ("Desai Decl."); argument by counsel at the hearing before this Court; any papers filed in reply; and all papers and records in this matter.

Respectfully submitted,

Dated:   January 8, 2016                     DESAI LAW FIRM, P.C.


By:_____/s/ Aashish Y. Desai_____
          Aashish Y. Desai
          Adrianne De Castro
          Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................3

    A.  Law & Motion Disputes Were Intensive....................................3

    B.  Discovery and Class Certification were Key Battle Grounds....................4

    C.  The Parties Prepared for Trial.................................................5

III.  TERMS OF THE SETTLEMENT ..........................................................6

    A.  Settlement Sums and Additional Consideration.........................................6

    B.  Monetary Relief to Class Members ..........................................7

    C.  Release of All Claims Against the Settling Defendants ...........................7

    D.  Attorney's Fees and Costs ......................................................7

    E.  Class Representative Service Payments .....................................8

IV.   ARGUMENT .....................................................................................8

    A.  The Class Action Settlement Approval Process ........................................8

    B.  The Court-Approved Notice Program Meets Applicable
        Standards and Has Been Fully Implemented.................................9

    C.  Final Approval of the Settlement is Appropriate....................................10

       1.  The Settlement Is the Product of Arm's-Length Negotiations
          Between the Parties and Follows Years of Hard-Fought
          Litigation and Plaintiffs' Thorough Investigation................................11

       2.  The Settlement is Fair, Reasonable, and Adequate ..............................12

       3.  The Recommendation of Experienced Counsel Favors Approval ........13

       4.  The Class Response Favors Final Approval.........................................13

    D.  Class Representative Service Payments ....................................14

    E.  Class Counsel Is Entitled to Reasonable Fees Under the Lodestar
        and Percentage of the Fund Methods ........................................16

i

      1. Class Counsel Obtained Excellent Results for the Class In Light of the Burdens of the Litigation ................................................... 19

    2. Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case ..................... 19

    3. Awards in Similar Cases Demonstrates That Class Counsel Seek A Reasonable Fee Award ............................................................ 19

    4. Other Factors Support Approval of Class Counsels' Fee Request ........ 20

       *i.  Counsel's Skill and Experience* ......................................................... 20

       *ii. A Lodestar Cross-Check Supports the Fee Request* .......................... 20

       *iii. No Class Member Objects to Class Counsel's Fee Request* ........... 21

F.  Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement ................................................................ 21

V.  CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

**Federal**

*Beck, et al. v. Boeing Co.,*
  Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004) ..............16

*Blanchard v. Bergeron,*
  489 U.S. 87, 94-95 (1989)..................................................18

*Blum v. Stenson,*
  465 U.S. 886, 900 n.16 (1984) ...........................................18

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 478 (1980)..................................................16

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610, 624 (N.D. Cal. 1979) ...............................14

*Ching v. Siemens Industry, Inc.*
  No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) ........................13

*Churchill Village, LLC v. General Electric,*
  361 F.3d 566, 577 (9th Cir. 2004)..............................................10, 14

*City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.,*
  100 F.3d 1041, 1043 (1st Cir. 1996) ......................................12

*Class Plaintiffs v. City of Seattle,*
  955 F.2d at 1290 (9th Cir. 1992)...................................10, 11, 14

*Create-A-Card, Inc. v. Intuit Inc.,*
  No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989,
  at *8-9 (N.D. Cal. Sept. 22, 2009) ......................................12

*Dilts v. Penske Logistics LLC,*
  769 F.3d 637 (9th Cir. 2014)..................................................4

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15, 18 (N.D. Cal. 1980) ......................................13

*Ferland v. Conrad Credit Corp.,*
  244 F.3d 1145, 1149 (9th Cir. 2001)...................................17

*Ficalora v. Lockheed Cal. Co.,*
  751 F.2d 995, 997 (9th Cir. 1985)......................................11

*Fischel v. Equitable Life Assur. Soc'y,*
  307 F.3d 997, 1006 (9th Cir. 2002)...................................17

*Guippone v. BH S&B Holdings, LLC,*
  2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) .......15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1026 (9th Cir. 1988)....................................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424, 433 (1983)..................................................................................18

*Hernandez v. Kovacevich "5" Farms*,
  No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605,
  at *25-31 (E.D. Cal. September 30, 2005).........................................................20

*Hughes v. Microsoft Corp.*,
  2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. Mar. 21, 2001) ........................14

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ........................................................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935, 945 (9th Cir. 2011).....................................................................17

*In re Heritage Bond Litig.*,
  MDL 02-1475, 2005 U.S. Dist. LEXIS 13555,
  at *64-74 (C.D. Cal. June 10, 2005) ..................................................................20

*In re Heritage Bond Litig.*,
  No. 02-MIL-1475 DT, 2005 WL 1594403,
  at *21 (C.D. Cal. June 10, 2005).......................................................................21

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373, 379 (9th Cir. 1995).......................................................................20

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294, 306-07 (3d Cir. 2005) .................................................................20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291, 1300 (9th Cir. 1994).................................................................16, 17

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685, 694 (N.D. Ga. 2001).................................................................16

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) ..............................................18

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819, 822 (D. Mass. 1987) .............................................................12

*Mangold v. Cal. Pub. Utils. Comm'n*,
  67 P.3d 1470, 1479 (9th Cir. 1995).................................................................7, 8

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173, 1178 (9th Cir. 1977)..................................................................13

*Meijer v. Abbott Laboratories*,
  No. 07-05985 (N.D. Cal. Aug. 11, 2011).............................................................19

*Mitland Raleigh-Durham v. Myer*,
  840 F. Supp. 235, 239 (S.D.N.Y.).......................................................................21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523, 529 (C.D. Cal. 2004) ..................................................13

*Novartis Pharms.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945,
  at *22-23 ..............................................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615, 635 (9th Cir. 1982).............................................10, 11

*Parker v. Jekyll & Hyde Entm't Holdings, LLC,*,
  2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. 2010) .........................15

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
  392 U.S. 134, 139 (1968)......................................................................17

*Pillsbury Co. v. Conboy*,
  459 U.S. 248, 262-63 (1983)..................................................................17

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  No. 09-6548, 2012 U.S. Dist. LEXIS 53556,
  at *41 (S.D.N.Y. April 20, 2012).........................................................15

*Staton v. Boeing Co.*,
  327 F.3d 938, 977 (9th Cir. 2003)...................................................8, 14

*Sugarman v. Ducati N. Am., Inc.*,
  2012 U.S. Dist. LEXIS 3961, *8 (N.D. Cal. Jan. 12, 2012) ...............14

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273, 333 n.65 (3d Cir. 2011).............................................8, 16

*Roberts v. Texaco*,
  979 F. Supp. at 188 (S.D.N.Y 1997) ...................................................16

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370, 1375 (9th Cir. 1993).........................................................11

*Utility Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437, 443 (9th Cir. 1989).........................................................11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943, 950 (9th Cir. 1976).........................................................11

*Vedachalam v. Tata Consultancy Servs. Ltd.*,
  No. 06-0963, 2013 U.S. Dist. LEXIS 100796,
  at *1-2 and 10 (N.D. Cal. July 18, 2013) ............................................19

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945,
  at *73 (S.D.N.Y. Nov. 30, 2010) .........................................................16

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759, 769 (9th Cir. 1977).........................................................21

*Wininger v. SI Mgmt. L.P.,*
  301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002) .....................................17

**State**

*Dan's City Used Cars, Inc. DBA Dan's City Auto Body v. Pelkey,*
  133 S.Ct. 1769 (May 13, 2013)..................................................................4

*In re Vitamin Cases,*
  110 Cal. App. 4th 1041, 1053 (2003) ....................................................17

### FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................9

Fed. R. Civ. P. 23 ..........................................................................................8

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................9

Fed. R. Civ. P. 23(c)(3) .................................................................................9

### TREATISES

4 NEWBERG ON CLASS ACTIONS,
  §§ 11.22, et seq. (4th ed. 2002)..................................................................9

MANUAL FOR COMPLEX LITIGATION (Fourth)
  §§ 21.632, et seq. (2004) ............................................................................8

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiffs submit this Memorandum in support of final approval of their class action Settlement with Defendant Ruan Logistics Corporation, ("RLC" or "Defendant").   The Court should grant final approval of the Settlement because it ends almost four-years of intense litigation and is more than fair, reasonable, and adequate to the Class.

The Settlement will resolve all of the claims of the Class of employees that the Court certified on February 13, 2014 (Dkt. No. 222) and February 5, 2015 (Dkt. 314) (the "Class").   The Settlement creates an all-cash fund of $3,500,000 (the "Settlement Fund").   Because this is a "no reversion" settlement, there was no unnecessary "claims process" instituted.  The Class employees will simply be given their back-wages.   It is the "gold standard" for wage and hour class action settlements because it imposes almost no burden on the employee while distributing virtually all of the Settlement Fund.

This result is particularly impressive in light of the contentious yet professional character of this litigation.  The Court granted preliminary approval of the Settlement on October 30, 2015. ("Preliminary Approval Order"; Dkt. 325.)  In doing so, the Court found that the Settlement fell within the range of reasonableness, and the factors relevant to final approval all weighed in favor of the Settlement (*id.* at 3); found that the proposed Plan of Allocation was sufficiently fair, reasonable, and adequate (*id.* at 4); approved settlement notice to the Class; appointed a Notice Administrator (*id.* at 5); and ordered a process for dissemination of the Settlement Notice, responses by Class members, and a Final Approval Hearing (*id.*).  The reaction of the Class has been overwhelmingly positive.  There are *zero* requests to opt-out and *zero* objections from the 431 Notices mailed to Class members.  The parties have carried out the Court's Order and the Settlement

should be finally approved.

Furthermore, Plaintiffs respectfully move this Court for an order granting: (1) attorneys' fees in the amount of $1,166,666 representing a voluntary ***$441,644 reduction*** from a fully-documented loadstar of $1,608,310; (2) reimbursement of $18,411.25 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action; and (3) service awards in the total amount of $5,000 each to Class Representatives Michael Burnham, Fernando Castillo, Ricky Crawford, Neva Crawford, Ted Day, John Ben Gugler, Charles Howlett, Eduardo Jimenez, Bill McMahon, Jody Paulson, Roberto Rojas, Todd Shook, Tony Skirrow, Dante Steward, Salvador Bucio Suarez, and Dan Ware.

Class Counsel requests fees from the Settlement Fund based on their tenacious litigation of this case and the excellent results achieved for the class.  This complex action entailed significant risks for Class Counsel and created high demands on their resources.  At every stage of this litigation, Defendant vigorously contested it.  As evidenced by the record, Plaintiffs expended thousands of hours diligently prosecuting this case, including reviewing thousands of pages of documents; preparing for and taking or defending out-of-town depositions; and preparing and submitting voluminous filings in support of class certification, attending hearings, and preparing for trial, mediation, and collateral appellate intervention, among other things.  (Declaration of Aashish Y. Desai in Support of Plaintiffs' Motion for Preliminary Approval, ¶¶ 4-12, Dkt. No. 320-1.)[1]  Class Counsel has also incurred substantial out-of-pocket costs to advance this litigation, including costs for deposition reporting and transcripts; mediation services; and litigation support vendors.  *See id.*  Class Counsel's request for reimbursement of $18,411.25 for expenses is fully supported by applicable law and the record.

///

---

[1]  Plaintiffs will refer to the Docket when referencing previously-submited evidence rather than submit repetative materials with the current Motion.

For the reasons set forth below, Plaintiffs respectfully submit that the attorneys' fees, expense reimbursements, and service awards to the Class Representatives are fair and reasonable under the applicable legal standards, and should be granted by this Court.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As this Court is well aware, this case was intensely litigated from the start. Plaintiffs are current and former truck drivers who work or worked for RLC in the State of California.   Almost four years ago, Plaintiffs, after months of meetings with Class Counsel, filed a federal class action complaint in May 2012 alleging they did not receive meal and rest breaks, did not receive compensation for these breaks, did not receive pay for certain non-driving work including pre- and post-shift work, and did not receive paystubs that complied with California law.

### A.    Law & Motion Disputes Were Intensive

The litigation in this case was relentless.  Defendant fought hard to dismiss this lawsuit and Plaintiffs fought hard to keep it alive and resolve pressing legal issues.  The parties filed cross-motions for summary judgment.  Plaintiffs moved for summary adjudication regarding the legality of Defendant's compensation plan. (Dkt. No. 17.)  Defendant moved for summary adjudication arguing preemption under the Federal Aviation Administration Authorization Act ("FAAAA"). (Dkt. Nos. 20-29.)  Plaintiffs had to respond to the substance of Defendant's Motion as well as voluminous objections and Supplemental Motions filed over several months. (Dkt. Nos. 28-29, 75-76, 91-121,130, 141-146.)  The Plaintiffs also filed a Motion for Summary Judgment as to their paystubs and reimbursement claims. (Dkt. Nos. 147, 148.)  In the aftermath, Defendant sought to dismiss the entire case by filing a Motion for Judgment on the Pleadings seeking to strike Plaintiffs PAGA claims and preempt their UCL claims. (Dkt. No. 188.)

///

3

The parties, and Plaintiffs, in particular, were faced with the distinct challenge of analyzing the evolving case law regarding FAAAA preemption and piece-rate compensation.  Plaintiffs were compelled to closely follow the state of the law and apprise the Court of recent rulings as they were happening. (*See* Dkt. No. 90; Dkt. No. 125; Dkt. No, 168, Dkt. No. 317.)  Recognizing the changing nature of the law, the Court also ordered the parties to file briefs addressing the potential impact of *Dan's City Used Cars, Inc. DBA Dan's City Auto Body v. Pelkey*, 133 S.Ct. 1769 (May 13, 2013), a recent Supreme Court decision interpreting the FAAAA.  (Dkt. No. 136.)

After voluminous briefing, the Court granted Defendant's Motion for Summary Judgment ruling that Plaintiffs' compensation and meal and rest break claims were preempted by the FAAAA. (Dkt. No. 172.)  Shortly thereafter, the Court also partially granted Plaintiffs' Motion for Summary Judgment as to their PAGA paystub claim. (Dkt. No. 179.)  However, further briefing and hearings were required in 2014 following the Ninth Circuit's decision in *Dilts v. Penske Logistics LLC*, 769 F.3d 637 (9th Cir. 2014), which resulted in the Court reversing its partial grant of summary judgment to Defendant.  If the parties had not reached a settlement, numerous legal and factual issues would require more litigation and significant time and resources.  But make no mistake -- this case was heavily and strategically litigated during its four year tenure.

### B.    Discovery and Class Certification were Key Battle Grounds

Nothing in this case was easy including discovery and class certification. Discovery has been thorough, and has required the parties to engage in numerous and extensive in-person and telephonic meetings concerning the scope of discovery and the analysis of the various documents including policy documents, paystubs, pay records, pay plans for several different terminals, and time sheets.

Defendant deposed several of the named Plaintiffs, and produced tens of thousands of records and drivers logs relating to the issues in this case.  As a result,

Class Counsel traveled to Victorville, California and -- over a two-day span -- prepared for, coordinated, and defended these depositions at a local hotel room. Moreover, Plaintiffs deposed key witness on the compensation, wage and pay practices that, in part, established the basis for this settlement. (Desai Decl. ¶ 7, Dkt. No. 320-1.)  Because each side was fighting vigorously for their respective positions, the parties also engaged in discovery battles, sometimes intense, regarding the proper scope of discovery -- spilling over into multiple rounds of discovery motions and appeals.  (Dkt. Nos. 65-67, 184-186, 207-210, 212-214.)  No doubt these efforts required heavy resources and significant time.

Class certification was equally contentious and complicated.  As result of the Court's Orders on summary judgment, the parties had three rounds of separate briefing on class certification.  (Dkt. Nos. 91, 202-206-222.)  In February 2014, the Court granted in part and denied in part Plaintiffs Second Amended Motion for Class Certification (Dkt. No. 222) and Plaintiffs' Motions to Compel information regarding the class.  (Dkt. No. 223.)

### C.    The Parties Prepared for Trial

In light of the Court's Order granting their Motion for Summary Judgment as to their PAGA claims, Plaintiffs, who were then Class Representatives, swiftly moved to assess PAGA penalties against RLC, following an earlier motion by RLC to disallow such penalties on Constitutional and statutory grounds.  The parties also prepared and filed all the pre-trial documents including memoranda of law and fact and exhibit and witness lists relating to the alleged wage statement and record keeping violations and waiting time penalties for those claims.  (Dkt. Nos. 225, 249-254.)

Soon after these filings, the parties reached a class-wide settlement on just the paystub claims for $700,000 during mediation with Mark Rudy on April 7, 2014.  With the paystub claims apparently settled, and following additional appellate decisions, Plaintiffs continued to aggressively litigate their meal and rest

break and compensation claims.  After the Court reversed its previous ruling and denied Defendant's Motion for Summary Judgment (Dkt. No. 282), Plaintiffs' meal and rest break claims, and compensation claims were re-established.

Plaintiffs then renewed their motion for class certification on those claims. On February 6, 2015, the Court granted Plaintiffs' Motion for Class Certification and certified the three classes based on the compensation claims, the meal and rest break claims, and waiting time penalty claims. (Dkt. No. 314.)  After substantial additional work and effort (and a little bit of luck), Ruan agreed to attend a second mediation before Hon. Edward Infante (Ret.) that resolved this case on the whole and forever -- finally.

## III.   TERMS OF THE SETTLEMENT

The Settlement resolves all claims of Plaintiffs and the Class against the RLC.  The details are contained in the attached Settlement Agreement. (Dkt. No. 320-2 ["Settlement Agreement"].)  The key terms of the Settlement are described below.

### A.   Settlement Sums and Additional Consideration

Settling Defendant will pay $3,500,000 to resolve all claims of Plaintiffs and the Class.  This amount is inclusive of attorneys' fees and costs (if approved), the cost of administration, enhancement payments to the Class Representatives (if approved), taxes attendant to distributions, and a payment to the LWDA for $200,000 for the State's share of the PAGA penalties.  This is a "no reversion" settlement.  The Class will not even have to "make a claim" in order to receive distributions; and distributions will be made *directly* to each class member who does not opt out of the class following notice to the class – and since no one has exercised this option, virtually all of the settlement money will flow *directly* to each truck driver.  This is the "gold standard" for class action settlements in employment wage and hour circles.  Any remainder from the Maximum Settlement Amount (if

any) will go to a *cy pres* fund designated by RLC, and previously approved by the Court, which RLC proposes to be the World Food Prize Foundation ("WLPF"), a well-regarded 501(c)(3) organization.  The Parties agree that this designation is appropriate given RLC's transportation of food and food products through the class members and the mission of WLPF to recognize contributions to improvements in food quantity, quality and distribution to needy people throughout the world.[2]

### B.    Monetary Relief to Class Members

After deducting the Class Representative Fees, Class Counsel's awarded attorneys' fees and costs, the payment to the LWDA, and the Claims Administrator's fees and expenses, the balance of the Maximum Settlement Amount (the "Net Settlement Proceeds"), Class Members will receive a share of the Settlement based on the total number of pay periods worked during the Class Period.  (Settlement Agreement, ¶¶ 11-18.)

This distribution is appropriate because (1) it is consistent with how class members were paid, how wage statements were issued, and how pay records were and are maintained; and (2) it is consistent with the way Plaintiffs calculated the PAGA and other penalties.

### C.    Release of All Claims Against the Settling Defendants

In exchange for the RLC's monetary consideration, Class Representatives and the Class will release RLC from all certified claims reasonably arising from the facts in the Complaint. (Dkt. No. 1) (Settlement Agreement, ¶¶ 19-20.)

### D.    Attorneys' Fees and Costs

Class Counsel moves, and Defendant does not appose, attorneys' fees of $1,166,666 from the Settlement Fund, plus costs and expenses of $18,411.25. Because the settlement Class Counsel obtained successfully resolved California

---

[2]  This *cy pres* fund was recently approved in the state court action against Ruan's sister company.  *Kevin Williams v. Ruan, Incorporated*, Tulare County, Superior Court, Case No. VCU231325.

state law claims, the request must be based upon California state law.  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 P.3d 1470, 1479 (9th Cir. 1995) (affirming that state law applies in determining not only the right to fees, but also in the method of calculating the fees).  As explained more fully below, fees are justified under either approach here.[3]

### E.    Class Representative Service Payments

Class Counsel seeks final approval of reasonable service award payments of $5,000 for each of the Named Plaintiffs.  "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (*en banc*) (affirming class action settlement with common fund, providing for service awards of $85,000 to each of two class representatives) (quotation omitted), *cert. denied*, 132 S. Ct. 1876 (2012). *See also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").  The requested service awards are reasonable and appropriate here as explained in more detail below.

## IV.    ARGUMENT

### A.    The Class Action Settlement Approval Process

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for the approval of class action settlements:

(1)    Preliminary approval of the proposed settlement after submission to the court of a written motion for preliminary approval;

(2)    Dissemination of notice of the proposed settlement to the class; and;

(3)    A formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement,

---

[3]    Under *Mangold*, federal courts applying California law actually have far more latitude than under federal law in the factors they may use in adjusting a lodestar.

and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See* MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 21.632, et seq. (2004).

This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests.   *See* 4 NEWBERG ON CLASS ACTIONS, §§ 11.22, et seq. (4th ed. 2012).   The Court here completed the first step in the settlement approval process when it granted preliminary approval to the Settlements. (Dkt. No. 325.)   As discussed below, the second step has been completed as well: the Court-approved notice plan was fully implemented.   By this Motion, Plaintiffs request that the Court take the third and final step: granting final approval of the Settlement so that the Class can immediately obtain the benefits from this long-suffering litigation.

## B.   The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented

When a proposed class action settlement is presented for court approval, the Federal Rules of Civil Procedure require: the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.   The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice plan approved by this Court is commonly used in class actions like this one and constitutes the best notice practicable under the circumstances. The content of the notice complied with the requirements of Rule 23(c)(2)(B). The notice provided a clear description of who is a Class Member and the binding

effects of Class membership. (Declaration of Third Party Administrator ("TPA Decl."), ¶ 4, Ex. A.)  The notice explained how money from the Settlement would be distributed, how to opt out of the Settlement, how to object to the Settlement, how to obtain copies of papers filed in the case, and how to contact Class Counsel and the Notice Administrator with any further questions or requests. (*Id*.)  The notice also explained that the Settlement itself was filed publicly with the Court and available at the Court.  As a result, every provision of the Settlement was available to each Class member.

The Court approved this notice plan. (Dkt. No. 325.)  The Court ordered Defendant to submit the Class Member information to Simpluris in a secure manner to and it did so. (TPA Decl., ¶¶ 4-5.)  The Court ordered that the Notice Administrator distribute notice according to the terms of the Settlement.  The Notice Administrator did so.  (TPA Decl ¶¶ 6-7.)

Class Members had information on how to access relevant documents, how to contact the Notice Administrator or Class Counsel, how to opt out of the Settlement, and how to object to the Settlement.  Class Counsel answered Class Member questions and responded to requests.

## C.    Final Approval of the Settlement is Appropriate

The law favors the compromise and settlement of class action suits.  *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [she] is 'exposed to the litigants and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice*, 688 F.2d at 626).  In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated

between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (citation and quotations omitted).   All of the relevant factors support final approval of the Settlements here.  "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and quieting litigation" and "[t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In evaluating a proposed class action settlement, the Ninth Circuit has recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice,* 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

### 1.   The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and Follows Years of Hard-Fought Litigation and Plaintiffs' Thorough Investigation

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or

overreaching by, or collusion among, the negotiating parties*." Class Plaintiffs v. City of Seattle*, 955 F.2d at 1290 (9th Cir. 1992) (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).   "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). *See also City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Create-A-Card, Inc. v. Intuit Inc.,* No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

The Settlement here is the product of extensive arm's-length negotiations. All parties were represented throughout these negotiations by counsel experienced in the prosecution, defense, and settlement of complex consumer and employment class actions.  (*See* Desai Decl., ¶ 32. Dkt No. 320-1.)   The Settlement here occurred after two mediations and after substantial investigation by Class Counsel; briefing, argument, and grant and denials of the parties dispositive motions; several rounds of class certification briefing; several trips to the Ninth Circuit; the completion of extensive fact discovery, including taking out-of-town depositions, and the analysis of thousands pages of employment and payroll documents.  The conduct of the parties in zealously representing their clients' interests reveals that the Settlement is the result of arm's-length discussions with able counsel.

### 2.    The Settlement is Fair, Reasonable, and Adequate

The Settlement meets the standard for final approval.  As the Court found in preliminarily approving the Settlement, the settlement appears to be "fair, adequate,

and reasonable to the Class" and "falls within the range of reasonableness and appears to be presumptively valid." (Dkt. No. 325, p. 2.)  The Court preliminary found the Settlement was the result of arms-length bargaining among experienced counsel. (Dkt. No. 325.)  All these factors weight in favor of final approval.  The record demonstrates counsel zealously advocating for their clients, resulting in a significant Settlement that the Court should approve.  The Plan of Allocation will directly pay each class member a share of the Net Settlement Fund based on the total number of pay periods worked during the Class Period.  Such *pro-rata* shares are common and reasonable in employment cases of this nature.  *See, e.g., Ching v. Siemens Industry, Inc*., No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).

### 3.   The Recommendation of Experienced Counsel Favors Approval

The judgment of experienced counsel regarding the Settlement should be given significant weight.  *See Linney v. Cellular Alaska P'Ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), aff'd 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).   Class Counsel have extensive experience litigating and settling employment class actions.  They have conducted an in-depth investigation into the factual and legal issues raised in this action, and have litigated the case relentlessly for almost four years.   The total endorsement of experienced Counsel supports final approval.

### 4.   The Class Response Favors Final Approval

A court may appropriately infer that a class settlement is fair, reasonable, and adequate when few Class members object to it. *See Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large

number of objections to a proposed class settlement action raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). Indeed, a court can approve a class action settlement over the objections of a significant percentage of Class members. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) ("A settlement is not unfair simply because a large number or a certain percentage of class members oppose it, as long as it is otherwise fair, adequate, and reasonable"); *City of Seattle*, 955 F.2d at 1291-96.

Out of 341 Class Members, there are ***zero*** objections and ***zero*** requests for exclusion. (TPA Decl., ¶¶ 12-13.) This is resounding support for the settlement. This exceptionally low rate of objections and opt-outs are "indicia of approval of the class." *Hughes v. Microsoft Corp.,* 2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. Mar. 21, 2001) (finding indicia of approval when nine class members out of 37,155, or just over .02%, who received notice submitted objections, and "less than 1%" opted out); *Sugarman v. Ducati N. Am., Inc*., 2012 U.S. Dist. LEXIS 3961, *8 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class member -- more than .1 percent, or more than five times the rate of objection as here -- is a "positive response"); *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement (.05 percent), and 500 class members opted out (about .56 percent)). This overwhelmingly positive response from the Class strongly favors Settlement approval.

### D.    Class Representative Service Payments

Class Counsel seeks final approval of reasonable service award payments of $5,000 for each of the Named Plaintiffs for their services as Class Representatives. *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments"). The requested service awards are reasonable and appropriate here.

The Class Representatives made important contributions to the prosecution and eventual settlement of this action on behalf of Class members.  They assisted Class Counsel with investigation; preparing and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering documents and other potential evidence about Defendants and their claims; assisting with various aspects of written and other discovery; discussing the strategy and progress of mediations in the case; and participating in regular conversations about the case.  Many of the Class Representatives appeared for deposition by Defendant.  (Dkt. No. 321-7, ["Compendium of Class Representative Declarations"].)  The $5,000 in requested service awards for each of the Class Representatives is most certainly reasonable.

Notably, the Class Representatives incurred the substantial risk of being black-balled in the trucking industry.  Most still work in this industry and they risked retaliation from their current employers and put their ability to secure future employment at risk as well.  (Dkt. No. 321-7, Compendium of Class Representative Declarations)   Even when there is not a record of actual retaliation, Class Representatives still deserve recognition for assuming the risk of retaliation for the sake of absent class members.  These concerns are particularly strong in this federal class action, where the Class Representatives' are easily verified by a web search and PACER.  *See, e.g., Sewell v. Bovis Lend Lease LMB, Inc*., No. 09-6548, 2012 U.S. Dist. LEXIS 53556, at *41 (S.D.N.Y. April 20, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer.").  *See also Sewell*, 2012 U.S. Dist. LEXIS 53556, at *42 ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted as 'problem' employees.").[4]

---

[4] *Guippone v. BH S&B Holdings, LLC.*, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC.*, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

Accordingly, courts have approved service payments to current and former employee-class representatives that have far exceeded the modest amount the Class Representatives request here. *Roberts v. Texaco*, 979 F. Supp. at 188 (S.D.N.Y 1997) (authorizing incentive awards ranging up to $85,000 in nationwide employment discrimination class action from a common fund of $115 million); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *73 (S.D.N.Y. Nov. 30, 2010) (granting service payments of $125,000 to each of 26 named plaintiffs); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004) (awarding $100,000 service payments to each of the named plaintiffs).

The proposed awards also reflect their "public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65.    Plaintiffs obtained significant PAGA penalties ($200,000) and compensation for Defendant's current and former employees.   All they are asking is for a mere 2.3% of the proposed settlement fund.  *See, e.g., Novartis Pharms.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 (affirming $3.775 million in in service award payments in part because it represented only 2.4 percent of the entire monetary award of $152.5 million).  This is imminently reasonable and modest.

**E.    Class Counsel Is Entitled to Reasonable Fees Under the Lodestar and Percentage of the Fund Methods**

As laid out in Plaintiffs' Motion for Preliminary Approval, Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work on behalf of the Class.  The Court-approved Notice informed Class Members Class Counsel's intent to seek attorneys' fees.   The law is clear that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

These principles are particularly important in complex wage and hour litigation and in PAGA cases, where private enforcement is a necessary component of legal compliance. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such as this one, encourage meritorious class actions, and thereby promote private enforcement of, and compliance with, the California Labor Code.

In the Ninth Circuit, the district court has discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047; *WPPSS*, 19 F.3d at 1296. Plaintiffs bring various state law claims, and under California law "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003). The Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Ninth Circuit recommends that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011).

Under the lodestar method, (California's "primary method" for calculating fees) Class Counsel's request for fees is imminently reasonable. The starting point for calculation of a reasonable fee under this method is the "lodestar," which is "the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services"); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (using "initial estimate" language and noting, "[a]djustments to that [lodestar] fee then may be made as necessary in the particular case"); *Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989).

In this case, Class Counsel has invested over $1,608,310.00 in lodestar based on 2,653.50 hours of work.   (Desai Decl. ¶ 5 Exh. B.)  These lodestar amounts are based on Plaintiffs Counsel's detailed, contemporaneous time records documenting the time they spent on this case.  After reaching a successful settlement in intense litigation, Class Counsel is now requesting a fee that is ***$441,644*** <u>less</u> than their lodestar.   Class Counsel (a small boutique firm consisting of one full-time partner, a paralegal, and a part-time associate) is not requesting any enhancement or multiplier.  This level of good faith and voluntary reduction certainly supports the request for fees and costs.

Although California state law applies, the fees requested here -- approximately one-third of the Settlement Fund -- are also within the range of reasonableness established by Ninth Circuit authority.  *See, e.g., Knight v. Red Door Salons, Inc*., No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) (observing that class action fee awards average around one-third of the recovery); *Miller v. CEVA Logistics USA, Inc*., NO. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) (noting that California district courts routinely award attorneys' fees in the range of 30-40% in class actions that result in the recovery of a common fund under $10 million).  The *Vizcaino* factors justifying an upward adjustment of a fee award are also in favor of Plaintiffs' request for attorneys fees.

///

### 1. Class Counsel Obtained Excellent Results for the Class In Light of the Burdens of the Litigation

After years of contentious litigation, Class Counsel secured a settlement totaling $3.5 million for the benefit of the Class. The Settlement Fund does not require Class Members to make a claim, submit payroll or paystub records, or verify any information. Instead, Class members who do not opt out will receive a payment of approximately $148 per pay period. This is real money without complication and will certainly benefit the Class in the most direct manner possible.

### 2. Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case

Class Counsel assumed significant risk in taking on this case, particularly in light of the fluctuating and changing law on piece-rate compensation plans and FAAAA preemption. Class Counsel faced the real possibility that they would not be paid for any of their services since this case was litigated on a wholly contingent basis. (Desai Decl., ¶¶ 4, 11; Dkt No. 320-1.) In addition, Class Counsel faced attacks at every stage of the proceedings from pleadings, to discovery, appeals to the Ninth Circuit, and three rounds of rigorous class certification briefing. These challenges increased the risk of an unsuccessful outcome, preemption, decertification and no fee of any kind. Indeed, the shear length of this case (almost four years) and volume of litigation prove the point. Indeed, Class Counsel has not been paid one penny since litigation started. This factor easily supports an upward adjustment of fees.

### 3. Awards in Similar Cases Demonstrate That Class Counsel Seek A Reasonable Fee Award

Class Counsel's request for fees here, while not regulated by federal law, is in line with the percentages awarded plaintiffs' counsel in other major employment

cases.[5]  *See Vizcaino*, 290 F.3d at 1050 (noting that "market rates" are a question of "lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."). Furthermore, courts within the Ninth Circuit have similarly awarded fees in various types of complex litigation.[6]   The awards granted in these complex cases demonstrate that Plaintiffs' fee request is appropriate under these circumstances.

### 4.   Other Factors Support Approval of Class Counsels' Fee Request

Additional factors support an upward adjustment; specifically, counsel's skill and experience and counsel's lodestar.  *See, e.g., In re Heritage Bond Litig.*, MDL 02-1475, 2005 U.S. Dist. LEXIS 13555, at *64-74 (C.D. Cal. June 10, 2005).

### i.  Counsel's Skill and Experience

Class Counsel no doubt used their substantial experience and skill prosecuting large-scale complex employment and consumer class actions to negotiate and successfully settle this case.

### ii.  A Lodestar Cross-Check Supports the Fee Request

A cross-check of the lodestar of Class Counsel demonstrates that the requested fee is more than reasonable.  Class Counsel has invested over $1,608,310 in lodestar, based upon over 2,653 hours of work.  (*See* Desai Decl. ¶ 5 Ex. B); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.   The district courts may rely on summaries submitted by the

---

[5]  *See, e.g., Vedachalam v. Tata Consultancy Servs. Ltd.*, No. 06-0963, 2013 U.S. Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18, 2013) (awarding 30% of settlement fund in an employment class action); *Meijer v. Abbott Laboratories,* No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).

[6]  *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605, at *25-31 (E.D. Cal. September 30, 2005) (33.3% of the $2.52 million settlement in an employment class action); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee) (decided after *Paul, Johnson*).

attorneys and need not review actual billing records."). The lodestar here, which *is* supported by actual billing records, demonstrates that Class Counsel's time and effort committed to this case ($1,608,310) *far exceed* their fee request of $1,166,666. As such, there is no doubt that the fees requested are reasonable. *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

### iii.   No Class Member Objects to Class Counsel's Fee Request

No class members have objected to Class Counsel's requested fee award, which was set forth in the Class Notice. The absence of objectors provides additional support for approval of our fee request. *In re Heritage Bond Litig.*, No. 02-MIL-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the request reasonable.").

**F.    Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement**

Class Counsel request reimbursement of expenses incurred as of August 21, 2015, in the amount of $18,411.25 to be paid from the Settlement Funds. (Desai Decl., ¶ 4 in support of Preliminary Approval; Dkt. No. 320-1.) "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *Mitland Raleigh-Durham v. Myer*, 840 F. Supp. 235, 239 (S.D.N.Y.) (citation omitted). Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Plaintiffs' costs were all necessary to litigate this case (court reporters for depositions; court and process server fees; postage and courier fees; mediator's fees; photocopies; and

case-related travel).  These are reasonable and standard expenses.

## V.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval to the Settlement; approve the Notice as being in compliance with Federal Rule of Civil Procedure 23 and due process; and approve the proposed Plan of Allocation as fair, reasonable, and adequate.

Plaintiffs further request the Court award: (1) attorneys' fees to Class Counsel in the amount of $1,166,666.00; (2) reimbursement of $18,411.25 in expenses that Class Counsel necessarily incurred in connection with the prosecution of this action; and (3) service awards of $5,000 for each of the Court-appointed Class Representatives.

Respectfully submitted,

Dated:   January 8, 2016                    DESAI LAW FIRM, P.C.


By:_____*/s/ Aashish Y. Desai*_____
         Aashish Y. Desai
         Adrianne De Castro
         Attorneys for Plaintiffs